UNITED STATES of America,
Plaintiff–Appellee,

v.

Clifton Lamount WILLIAMS,
Defendant–Appellant.

No. 03–4127.

United States Court of Appeals,
Fourth Circuit.

Argued: Jan. 23, 2004.

Decided: April 15, 2004.

**ARGUED:** Jeanette Doran Brooks, Office of the Federal Public Defender, Raleigh, North Carolina, for Appellant. Christine Witcover Dean, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Stephen C. Gordon, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant. Frank D. Whitney, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

Before WILLIAMS, TRAXLER, and KING, Circuit Judges.

Affirmed by published opinion. Judge TRAXLER wrote the opinion, in which Judge WILLIAMS and Judge KING joined.

## OPINION

TRAXLER, *Circuit Judge*:

Clifton Williams appeals his conviction on one count of conspiracy to transfer a machinegun, and one count of knowingly possessing and transferring a machinegun. *See* 18 U.S.C.A. § 371 (West 2000); 18 U.S.C.A. § 922(*o*) (West 2000). He contends that, as matter of law, possession of a frame or receiver does not constitute possession of a machinegun, and he also argues that the firearm statute at issue is unconstitutionally vague. We conclude that his arguments are without merit and affirm.

### I.

The facts in this case are uncontroverted. The Bureau of Alcohol, Tobacco and Firearms ("ATF"), working with a paid, confidential informant, set up the purchase of a modified Norinco Mak 90 Sporter—a weapon the government contends is a machinegun—from a man, known as "Hilberto," and another individual. The informant, wearing a wire, went to the parking lot of a Wal–Mart shopping center in Garner, North Carolina, where he met with Hilberto. An ATF agent, Michael Fannelly, surveilled the scene while the informant spoke with Hilberto. Several minutes after the informant arrived in the parking lot, Clifton Williams arrived. Williams spoke with the informant and opened the trunk of Hilberto's car to show the informant the gun. Williams then moved the gun and some ammunition to the informant's car and the informant paid Williams $500 for the firearm. ATF

agents later recovered the firearm and three magazines each loaded with 30 rounds of ammunition from the informant's car.

The following day, the informant telephoned Williams and complained that the gun was too slow, saying, "I pulled the little thing, and only one taco is spit outside." Supp. J.A. 231. Williams responded, "You gotta open it up, man.... [T]ake the pin out of it . . . When you push the trigger it'll just spit them out . . . [T]ake the little sliding leverage out. Then the bolt will automatically stay open." Supp. J.A. 231–32.

This transaction led to Williams's arrest and subsequent indictment for conspiracy to transfer a machinegun and for transferring a machinegun.[1] At trial, Richard Vasquez, a firearms enforcement officer with the ATF, testified as an expert in the classification of machineguns. Vasquez stated that the markings on the receiver the informant purchased from Williams indicated that it was a machinegun receiver manufactured in China and illegally imported into the United States. Vasquez further testified that a large pinhole at the bottom of the receiver, which was plugged with a large pin, showed the weapon was a machinegun, because that is where the machinegun sear would be mounted. On cross-examination, Agent Vasquez stated that the receiver was not a part, but rather the foundation of a machinegun.

After closing arguments, the district court judge instructed the jury as to the definition of the term "machinegun," quoting directly from the relevant portion of the statute. The jury subsequently convicted Williams on both counts and the district court sentenced Williams to thirty-three months imprisonment. This appeal followed.

---

1. John Doe, a/k/a "Hilberto," was also indicted. Hilberto was a fugitive during trial. After the trial, the government determined that

Hilberto's true name was Ernesto Del Rosier. He later was caught and pleaded guilty to the charges in the indictment.

## II.

■ Williams contends that possession or transfer of a frame or receiver of a machinegun alone does not, as a matter of law, constitute possession or transfer of a machinegun itself under the statute. We review questions of statutory interpretation de novo, *Holland v. Pardee Coal Co.,* 269 F.3d 424, 430 (4th Cir.2001), "begin[ning] with the language of the statute." *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). We must first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). "Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* (internal quotation marks omitted).

Section 922(*o*) provides that "[i]t shall be unlawful for any person to transfer or possess a machinegun." 18 U.S.C.A. § 922(*o*). Although section 922(*o*) does not contain a definition of the term "machinegun," 18 U.S.C.A. § 921(a)(23) specifies that the term "machinegun" has the same definition as that provided in 26 U.S.C.A. § 5845(b). *See* 18 U.S.C.A. § 921(a)(23) (West 2000 & Supp.2003). Section 5845 states:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a

machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C.A. § 5845(b) (West 2002).

Williams asserts that under this definition the receiver he transferred did not constitute a machinegun because "a frame or receiver" alone is not a machinegun. Rather, Williams argues, a frame or receiver is only a machinegun when it is among "a combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." Specifically, Williams contends that the phrase "from which a machinegun can be assembled" in the last sentence of section 5845(b) modifies not only the term "combination of parts," but also the preceding terms within the same sentence, including "frame or receiver." Thus, Williams reasons,

> in order for something which is less than a complete machinegun to constitute a machinegun under § 5845(b), that part or parts must be capable of being assembled to create a working machinegun and must be, in addition, one of the following: (1) a frame or receiver of a machinegun; (2) any part designed and intended solely and exclusively, or [any] combination of parts designed and intended, for use in converting a weapon into a machinegun [;] (3) any combination of parts.

Appellant's Brief at 17–18.

The plain language of the statute reads otherwise. The word "and" used in the last sentence of section 5845 reflects a purpose to include three separate and individually sufficient categories of weapons within the definition of a machinegun: (1) a frame or receiver; (2) conversion parts; and (3) combination parts from which a machinegun can be assembled.[2] Contrary

---

**2.** Our reading of the word "and" in section 5845(b) as incorporating three separate and

to Williams's strained and unworkable reading of the last sentence, the phrase "from which a machinegun can be assembled if such parts are in the possession or under the control of a person" modifies only the third distinct category of "a combination of parts."[3]

Under Williams's reading of the statute, a "frame or receiver" is only a specific "part" of a machinegun—a "part" from which a machinegun can be assembled if you have other parts as well. Under this interpretation, the words "frame or receiver" would be surplusage since they would necessarily be included in the broader term "parts." Such a reading, therefore, is inconsistent with the principle that a court is obliged to "give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). In interpreting section 5845(b), we must assume that Congress chose to use the term "frame or receiver" as something separate and distinct from a mere "part." As the district court correctly concluded, the "frame or receiver" is not "part" of the weapon, it is the weapon.

Our conclusion that the statutory language in section 5845(b) mandates an interpretation that envisions three separate and individually sufficient categories of

machinegun is supported by case law from other circuits. *See, e.g., Palmieri*, 21 F.3d at 1271 ("[T]he plain language of the statute itself ... provides that machinegun '*shall also include*' items A, items B and items C. This language ... includes three new categories within the definition of machinegun." (emphasis in original)); *Thompson/Center Arms Co. v. United States*, 924 F.2d 1041, 1046–47 (Fed.Cir.1991) (finding that 1968 amendments to machinegun definition provided three new categories); *United States v. Bradley*, 892 F.2d 634, 636 (7th Cir.1990) (concluding that machinegun definition contains three distinct categories).

### III.

■ Williams also contends that the firearm statute at issue relies upon an unconstitutionally vague definition of machinegun. We review the constitutionality of a federal statute de novo. *United States v. Sun*, 278 F.3d 302, 308 (4th Cir. 2002).

■ "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975). Because the First Amendment is not implicated in

individually sufficient categories of "machineguns" within one sentence is further bolstered by a reading of section 5845(a), where "and" is used in a similar manner to include eight separate and sufficient definitions of "firearm" in one sentence. *See* 26 U.S.C.A. § 5845(a).

3. Because we find that the plain language of the statute mandates an interpretation that includes three distinct categories of weapons within the definition of machinegun, we need not consider the legislative history of section 5845(b). We note, however, that the legislative history clearly indicates an intent to expand the definition of machinegun to create three new distinct categories:

The second sentence [of § 5845(b) ] is new. It provides three new categories as included within the term "machinegun": (1) the frame or receiver of a machinegun, (2) any combination of parts designed and intended for use in converting a weapon other than a machinegun into a machinegun; for example, so-called conversion kits, and (3) any combination of parts from which a machinegun can be assembled if such parts are in the possession of a person.

*See United States v. Palmieri*, 21 F.3d 1265, 1271–72 (3d Cir.1994)(quoting S.Rep. No. 1501, 90th Cong., 2d Sess. 45–46 (1968)), *vacated on other grounds by* 513 U.S. 957, 115 S.Ct. 413, 130 L.Ed.2d 329 (1994).

this case, Williams's challenge to Section 5845(b) is reviewed only as the statute was applied to him. *Sun,* 278 F.3d at 309.

■ Due process requires that a criminal statute provide adequate notice to a person of ordinary intelligence that the contemplated conduct is illegal. *See id.* Williams contends that section 5845(b) is impermissibly vague as applied to him because the definition of machinegun does not provide notice as to "possession of what weapon" will violate the statute. In other words, the crux of Williams's argument is that the language in section 5845 violates due process by not specifying the proscribed firearms more clearly. We disagree.

The statutory definition of "machinegun" provides a person of ordinary intelligence clear notice that it is unlawful to transfer a machinegun frame or receiver. As we have already noted, the language of the statute plainly specifies three distinct and individually sufficient categories of machineguns. The first of the three listed categories clearly states that a "frame or receiver" is a proscribed machinegun. Examining the facts of this case, we note that it is undisputed that the firearm Williams possessed and later transferred was such a receiver. "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). Accordingly, we hold that the statute was not unconstitutionally vague as applied to Williams's behavior.

### IV.

For the foregoing reasons, we find that the district court committed no error. We therefore affirm.

*AFFIRMED*