**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

STACY PLATONE,

*Petitioner,*

v.

UNITED STATES DEPARTMENT OF
LABOR,

*Respondent.*

No. 07-1635

EQUAL EMPLOYMENT ADVISORY
COUNCIL; CHAMBER OF COMMERCE
OF THE UNITED STATES OF AMERICA,

*Amici Supporting Respondent.*

On Petition for Review of an Order of
the United States Department of Labor.
(04-154; 2003-SOX-27)

Argued: September 22, 2008

Decided: December 3, 2008

Before WILLIAMS, Chief Judge, and TRAXLER and
GREGORY, Circuit Judges.

Affirmed by published opinion. Judge Gregory wrote the
opinion, in which Chief Judge Williams and Judge Traxler
joined.

**COUNSEL**

**ARGUED:** Michael MacKager York, WEHNER & YORK, Reston, Virginia, for Petitioner. Theresa Schneider Fromm, UNITED STATES DEPARTMENT OF LABOR, Office of the Solicitor, Washington, D.C., for Respondent. **ON BRIEF:** Jonathan L. Snare, Acting Solicitor of Labor, Steven J. Mandel, Associate Solicitor, Ellen R. Edmond, Counsel for Whistleblower Programs, UNITED STATES DEPARTMENT OF LABOR, Office of the Solicitor, Washington, D.C., for Respondent. Robin S. Conrad, Shane Brennan, NATIONAL CHAMBER LITIGATION CENTER, Washington, D.C., for Amicus Curiae Chamber of Commerce of the United States of America; Rae T. Vann, Paulos Iyob, NORRIS, TYSSE, LAMPLEY & LAKIS, L.L.P., Washington, D.C., for Amicus Curiae Equal Employment Advisory Council.

---

**OPINION**

GREGORY, Circuit Judge:

This case challenges a ruling of the Department of Labor's Administrative Review Board ("ARB") denying Stacy Platone whistleblower protection under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A (2006). For the reasons stated herein, the ARB's decision is affirmed.

I.

Stacy Platone, Appellant, worked for the Airline Pilots Association ("ALPA") as a pilot communications specialist. In the summer of 2002, Atlantic Coast Airlines ("ACA"), a wholly owned subsidiary of Atlantic Coast Airline Holdings, Inc., solicited applications for the position of manager of labor relations. Upon the recommendation of Captain John

Swigart, a pilot at ACA and chair of ALPA's local Master Executive Council, ACA hired Platone to fill the position. Swigart and Platone were in a relationship at the time; however, it is disputed whether Jeffrey Rodgers, ACA's Senior Director of Labor Relations and Planning—and Platone's immediate supervisor—knew of the relationship at the time of hiring.

After she started working at ACA, Platone began to notice discrepancies regarding the airline's flight-loss process—the procedure by which the union reimbursed the airline when its pilots had to miss flights in order to attend union meetings. Tiffany de Ris, ACA's Manager of Crew Resources, informed Platone that ALPA had not been billed for several months of flight loss.

Platone obtained the flight-loss records in February 2003 and discovered that pilots were also intentionally scheduling flights for days on which they were originally not scheduled to fly and for times at which they knew they would be required to attend union meetings. In essence, the pilots were getting paid for days on which they were originally not even supposed to fly and, in fact, did not fly. ALPA's policy was not to pay for missed time on originally scheduled days off. When Platone alerted Rodgers to the issue, he told her that ACA would not pay the pilots for the days off if ALPA would not reimburse ACA. Platone had also informed Captain Chris Thomas, an ACA pilot and Swigart's successor at ALPA, of the discrepancy, and Thomas contacted Rodgers and assured him that the union would reimburse ACA for the flight loss.

Platone was not satisfied with the union's response, and on March 6, 2003, she sent Rodgers a draft letter, addressed to Thomas, demanding that ALPA uphold its flight-loss obligations. The letter also informed Thomas that if ALPA wanted ACA to continue to pay pilots who attended ALPA business on days for which they were not originally scheduled to fly, but which were subsequently voluntarily scheduled, he would

need to inform ACA in writing to do so and indicate that ALPA would reimburse ACA. The following day, Rodgers e-mailed Platone to inform her that he did not intend to send the letter that she drafted.

Platone met with Michelle Bauman, ACA's Director of Employment Services, on March 12, 2003. Bauman testified that Platone mentioned the flight-loss problem during the meeting, and handwritten notes from Bauman's assistant veri-fied that there was a discussion of the issue, though there was no indication that Platone made allegations of fraud. The fol-lowing day, Platone met with senior airline officials, who sus-pended her with pay due to an unspecified conflict of interest. On March 19, 2003, Platone was officially fired, ostensibly because of her relationship with Captain Swigart.

Platone filed a Sarbanes-Oxley whistleblower action with the Occupational Safety and Health Administration ("OSHA") on April 3, 2003, setting forth the above facts, and for the first time, making an allegation of fraud. OSHA denied Platone's complaint, finding that she failed to establish that she had engaged in protected activity. On August 14, 2003, Platone requested a hearing before the Office of Administrative Law Judges.

The administrative law judge ("ALJ") found that Platone's suspicions of fraud set forth in her OSHA complaint were rea-sonable, and that by alerting Rodgers and Bauman to the dis-crepancies, she had engaged in protected activity under the Sarbanes-Oxley Act. The ALJ concluded that a fraudulent scheme to compensate pilots in the hopes of gaining union contract concessions would necessarily involve the use of the mail and wires, and would therefore fall under the protection of the Sarbanes-Oxley Act. The ALJ imputed knowledge of Platone's complaints to the managers at ACA responsible for employment decisions, whether or not they were directly involved in the dealings. The ALJ further concluded that Pla-tone's complaints were a contributing factor to her dismissal.

Given that Platone's job involved direct dealings with ALPA, the ALJ found that ACA had a legitimate, non-pretextual reason for firing Platone. Nevertheless, the ALJ concluded that it was impossible to separate the legitimate and improper reasons for firing Platone, and therefore that ACA failed to meet its burden to show by clear and convincing evidence that it would have fired Platone even if she had not come forward with her complaints.

ACA filed an appeal with the Administrative Review Board of the Department of Labor ("ARB"), which reversed the ALJ's findings. First, the ARB held that allegations of mail or wire fraud under Sarbanes-Oxley must involve conduct that is at least "adverse to investors' interests." *Platone v. FLYi, Inc.*, ARB Case No. 04-154, 2006 DOLSOX LEXIS 105 at *29 (ARB Sept. 29, 2006). Second, the ARB held that Platone's allegations must relate definitively and specifically to the categories of fraud or securities violations listed in 18 U.S.C. § 1514A(a)(1) (2006). *Id.* at *33.

The ARB concluded that Platone's e-mails to Rodgers and meeting with Bauman did not communicate information specifically enough to indicate possible fraud against shareholders. Indeed, the ARB concluded that "the real victim of any alleged impropriety was ALPA" since Platone and Rodgers had been reassured that ALPA would reimburse ACA for the flight pay loss. *Id.* at *42-43. Having reached this conclusion, the ARB held that Platone failed to provide ACA with specific information relating to protected activity under § 1514A(a)(1), and it therefore declined to address the remaining issues raised on appeal. *Id.* at *45-46.

## II.

The whistleblower provision of the Sarbanes-Oxley Act is codified at 18 U.S.C. § 1514A(a) (2006).[1] The Act incorpo-

---

[1](a) Whistleblower Protection for Employees of Publicly Traded Companies.— No company with a class of securities registered under section

rates the rules and procedures set forth in 49 U.S.C. § 42121(b) (2000). Because the allegations at issue occurred in Virginia, jurisdiction is conferred on this Court by 49 U.S.C. § 42121(b)(4).[2]

---

12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)), or any officer, employee, contractor, subcontractor, or agent of such company, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee—

> (1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by—

> (A) a Federal regulatory or law enforcement agency;

> (B) any Member of Congress or any committee of Congress; or

> (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct); or

> (2) to file, cause to be filed, testify, participate in, or otherwise assist in a proceeding filed or about to be filed (with any knowledge of the employer) relating to an alleged violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.

[2]"Any person adversely affected or aggrieved by [a final order of the Secretary of Labor] may obtain review of the order in the United States Court of Appeals for the circuit in which the violation, with respect to which the order was issued, allegedly occurred or the circuit in which the complainant resided on the date of such violation."

The Administrative Procedure Act, 5 U.S.C. § 706(2) (2006), sets forth the standard of review for this action, as referenced in 49 U.S.C. § 42121(b)(4)(A). The ARB's findings of law are reviewed de novo, with due deference accorded by this Court to the ARB's interpretation of § 1514A, and the findings should be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2000). *See also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984); *Welch v. Chao*, 536 F.3d 269, 275-76 (4th Cir. 2008).

The Administrative Procedure Act compels this Court to uphold the ARB's findings of fact if they are supported by substantial evidence. In doing so, however, we also accord a degree of deference to the factual findings of the ALJ. The ARB's standard for reviewing the factual findings of the ALJ is substantial evidence. 5 U.S.C. § 706(2)(E). Substantial evidence is that which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

### III.

The ARB ruled below that allegations to management under the whistleblowing provision of the Sarbanes-Oxley Act must be definitively and specifically related to one of the areas accorded protection in § 1514A(a)(1). The Court upheld this conclusion in *Welch*, 536 F.3d 269, 276 n.2, where it accorded *Chevron* deference to the ARB's interpretation of § 1514A.[3]

Factually, the ALJ found that at least Rodgers, Bauman,

---

[3]The ARB went further to interpret § 1514A to require the complainant, when alleging mail or wire fraud, to demonstrate that the fraud would be adverse to the interests of shareholders or investors. The *Welch* decision did not reach this portion of the ARB's opinion, and because we decide this case on alternate grounds, neither does our decision today.

and Davis were made aware of the flight-loss issue by Platone, and it imputed knowledge to Moore, the final decision-maker. Moreover, the ALJ concluded that the scheme alleged in the OSHA complaint inherently involved the use of mail and wires—an area protected by the statute. As noted above, however, the ARB refined the requirements for § 1514A and determined that Platone failed to provide her superiors with definitive and specific information regarding the alleged fraud that was taking place. The ARB reached its conclusion by reading Platone's actions as little more than alerting ACA management to an internal billing issue. We agree with the ARB and find that Platone failed to make a proper allegation of fraud.

As the ALJ noted, ACA was engaged in important contract negotiations with ALPA at the time of Platone's complaints. Platone alleged in her OSHA complaint that by avoiding the flight-loss issue, ACA was trying to channel money to the ALPA officials who would be involved in these negotiations in the hope that ACA would obtain favorable concessions. Thus, the ALJ concluded that Platone had a reasonable basis to suspect that ACA officials were engaging in fraud against the shareholders.

But the ALJ did not find that Platone clearly articulated her belief of mail or wire fraud to ACA, and the ARB found that she clearly did not. It is true that she alerted ACA management to a billing discrepancy. Yet, a billing discrepancy, without more, does not equal fraud, and Platone failed to identify to ACA why she believed the actions related to the discrepancies would violate securities laws and constitute a fraud. The first time Platone made an actual allegation of fraud was in her OSHA complaint. Therefore, Platone did not sufficiently articulate her fraud theory to ACA, and Sarbanes-Oxley does not afford her whistleblower protection.

Our holding today does not heighten the requirements for a complainant's prima facie showing or otherwise change the

burden-shifting regime for Sarbanes-Oxley whistleblower actions. *See* 49 U.S.C. § 42121(b)(2)(B) (2000). We hold only that a complainant must alert management to more than the fact that the company's near-term profits were affected by billing discrepancies in order to meet the standard of definitively and specifically alleging mail or wire fraud.

## IV.

As a result of our conclusion that Platone failed to establish a prima facie case for Sarbanes-Oxley whistleblower protection, we need not address the remaining issue of whether ACA presented a legitimate, non-pretextual reason for firing Platone.

The decision of the ARB is hereby affirmed.

*AFFIRMED*