**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-2155**

GEORGE WELCH FOLK; TIMOTHY BRIAN FOLK,

Petitioners,

v.

ROBERT A. STURGELL, Acting Administrator Federal Aviation
Administration,

Respondent.

On Petition for Review of an Order of the National
Transportation Safety Board. (SE-18005; SE-18018)

Argued: March 23, 2010                    Decided: April 22, 2010

Before DUNCAN and DAVIS, Circuit Judges, and Joseph R. GOODWIN,
Chief United States District Judge for the Southern District of
West Virginia, sitting by designation.

Affirmed by unpublished opinion. Judge Duncan wrote the
opinion, in which Judge Davis and Judge Goodwin joined.

Robert Giacinto Blackford, ALLEN & BLACKFORD, PC, Gaithersburg,
Maryland, for Petitioners. Laura Jennings, FEDERAL AVIATION
ADMINISTRATION, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

This appeal arises from a National Transportation and Safety Board ("Board") decision affirming an Administrative Law Judge's ("ALJ") determination that Petitioners George and Timothy Folk violated Federal Aviation Administration ("FAA") regulations. The issues before this court are whether substantial evidence supports the finding that Petitioners flew over a "congested area" according to 14 C.F.R. § 137.51 and whether the term "congested area" violates the vagueness doctrine under the Due Process Clause. For the reasons that follow, we affirm.

I.

George Folk owns a farm in Martinsburg, West Virginia, and operates a crop-dusting business with his son Timothy Folk. On May 30, 2006, FAA Inspector George Cooper Towers received a complaint about Petitioners flying too low. During a routine inspection on June 16, 2006, Towers told Petitioners that he had received a complaint about low flying and warned them that they must submit a "congested area plan" before flying over any congested area. When Petitioners asked what the term "congested area" meant, Towers responded that no precise definition existed. He explained, however, that "a group of . . . as few as two or three houses . . . may be considered congested." J.A.

95. The significance of designating an area as congested is that if complaints are made with respect to an area that is determined to be congested, and no congested area plan has been filed, the FAA will initiate an enforcement action. However, the filing of a congested area plan is not considered an admission that the proposed area is indeed congested.

On July 31, 2006, and September 9, 2006, Petitioners flew their plane near the intersection of Swan Pond Road and Hollida Lane in Martinsburg. Because they considered this area uncongested, Petitioners did not file a congested area plan before either flight. When neighbors complained about Petitioners' low flying, Towers initiated enforcement proceedings against them. After conducting an evidentiary hearing, the ALJ determined that Petitioners had violated FAA regulations because the area near the intersection of Swan Pond Road and Hollida Lane was, in fact, congested. The Board affirmed. This appeal followed.

## II.

Petitioners argue that the term "congested area" violates the vagueness doctrine under the Due Process Clause, and that substantial evidence does not support the determination that they flew over a congested area. In order to provide context for these issues, we begin with a discussion of the relevant

3

regulatory framework.  We then address each of Petitioners'
contentions in turn.

### A.

FAA regulations generally prohibit low flying over
congested areas.  For example, Section 91.119 of Chapter 14 of
the Code of Federal Regulations, which establishes "[m]inimum
safe altitudes," provides:

> Except when necessary for takeoff or landing, no
> person may operate an aircraft below the following
> altitudes:
>
> *    *    *
>
> (b) Over congested areas.  Over any congested area of
> a city, town, or settlement, or over any open air
> assembly of persons, an altitude of 1,000 feet above
> the highest obstacle within a horizontal radius of
> 2,000 feet of the aircraft.
>
> (c) Over other than congested areas.  An altitude of
> 500 feet above the surface, except over open water or
> sparsely populated areas.  In those cases, the
> aircraft may not be operated closer than 500 feet to
> any person, vessel, vehicle, or structure.

14 C.F.R. § 91.119.  This section governs "the operation of
aircraft within the United States and within 12 nautical miles
from the coast of the United States."  Id. § 91.101.

FAA regulations provide for more lenient treatment of
agricultural aircraft.  Sections 137.49 and 137.51 of Chapter 14
also concern minimum altitudes, but "apply to persons and
aircraft used in agricultural aircraft operations."  Id. §

4

137.29(a). Section 137.49 regulates "[o]perations over other than congested areas," providing:

> Notwithstanding Part 91 of this chapter, during the actual dispensing operation, including approaches, departures, and turnarounds reasonably necessary for the operation, an aircraft may be operated over other than congested areas below 500 feet above the surface and closer than 500 feet to persons, vessels, vehicles, and structures, if the operations are conducted without creating a hazard to persons or property on the surface.

Id. § 137.49. Section 137.51 regulates "[o]peration over congested areas," providing:

> (a) Notwithstanding Part 91 of this chapter, an aircraft may be operated over a congested area at altitudes required for the proper accomplishment of the agricultural aircraft operation if the operation is conducted --
>
> > (1) With the maximum safety to persons and property on the surface, consistent with the operation; and
> >
> > (2) In accordance with the requirements of paragraph (b) of this section.
>
> (b) No person may operate an aircraft over a congested area except in accordance with the requirements of this paragraph.
>
> > (1) Prior written approval must be obtained from the appropriate official or governing body of the political subdivision over which the operations are conducted.
> >
> > (2) Notice of the intended operation must be given to the public by some effective means, such as daily newspapers, radio, television, or door-to-door notice.
> >
> > (3) A plan for each complete operation must be submitted to, and approved by appropriate

5

personnel of the FAA Flight Standards District Office having jurisdiction over the area where the operation is to be conducted. The plan must include consideration of obstructions to flight; the emergency landing capabilities of the aircraft to be used; and any necessary coordination with air traffic control.

Id. § 137.51. Subsection (b) further provides: "No person may operate any multiengine aircraft over a congested area below the altitudes prescribed in Part 91 of this chapter except during the actual dispensing operation, including the approaches, departures, and turnarounds necessary for that operation." Id. § 137.51(b)(5)(iii).[1]

The regulations never define "congested area" or "other than congested area." At the relevant time, the FAA Inspectors' Handbook 8700.1 provided the only guidance:

> H. Considerations for Congested Area Determinations. The term congested area has been applied on a case by case basis since it was first used. No precise mathematical or geographic definition has been developed. The rule is clear that the congested area must be an area of a city, town, or settlement. However, some guidelines have been developed to assist in interpretation:
>
> > (1) The purpose of the rule is to provide minimum safe altitudes for flight and to provide adequate protection to persons on the ground. The following areas were determined to be congested by the Civil Aeronautics Board, in past cases:

---

[1] Section 137.51(b)(5)(iii) rebuts Petitioners' argument that section 91.119 was never intended to apply to agricultural aircraft.

6

(a) Approximately 10 houses and a school,

(b) the campus of a university,

(c) a crowded beach area along a highway, and

(d) a boy's camp where numerous people were on the docks and the shore.

(2) The presence of people is important to the determination of whether an area is "congested."

(3) The term is administered to prohibit over flights that cut the corners of large, heavily congested, residential areas.

(4) No definition has been constructed, which determines the allowable number of people, the amount of ground traffic, the proximity of buildings to each other, the number of buildings or residences, or other conditions that exist in a particular area, to both protect persons or property on the ground and allow agricultural aircraft operations to take place.

J.A. 216. The Handbook added, regarding section 137.49, that where "the pilot of an agricultural aircraft dispenses an economic poison on a field adjacent to a farmhouse," he "may operate less than 500 feet above the surface or closer than 500 feet to the house provided the house or its occupants are not exposed to hazard from the aircraft or the chemicals." J.A. 216.

7

Petitioners contend that section 137.49 applies here because they flew over a non-congested area.[2]  By contrast, the FAA contends that section 137.51 applies because they flew over a congested area.  Thus the question before the ALJ was whether the relevant area was congested for purposes of section 137.51.

## B.

Petitioners argue that because the term "congested area" does not have a clear meaning, section 137.51 violates the vagueness doctrine under the Due Process Clause.  We review this issue de novo.[3]  See United States v. Williams, 364 F.3d 556, 559 (4th Cir. 2004).

---

[2] We note, but need not decide, that section 137.49 may not have assisted Petitioners even if the relevant area had not been congested.  One witness testified before the ALJ that one of the relevant flights caused a "loud rumble" in his house that sounded like "someone had hit [the] house."  S.J.A. 12.  When the resident of the house went outside to investigate, the plane flew over him four different times at an altitude of about 100 to 300 feet.  The witness testified that he did not "feel safe having a plane flying at such altitude over [his] residence." S.J.A. 16-17.  These circumstances might have been interpreted as "creating a hazard to persons or property on the surface" under section 137.49.  14 C.F.R. § 137.49.

[3] Notably, the Board would have lacked jurisdiction to entertain Petitioners' constitutional challenge to "congested area" in section 137.51.  See Adm'r v. Eby, 3 N.T.S.B. 614, 615 (N.T.S.B. 1977) ("With respect to respondent's attack on the regulations as unconstitutionally vague (due to the absence of a definition of 'congested area'), the Board has consistently held that it lacks jurisdiction to entertain attacks on the validity of the [Federal Aviation Regulations].").

Petitioners must show that the relevant section was impermissibly vague as applied to them.[4]  We have explained the relevant test as follows:

> A statute is impermissibly vague if it either (1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or (2) authorizes or even encourages arbitrary and discriminatory enforcement. . . . Stated differently, a court considering a vagueness challenge must determine if the statutory prohibitions are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with.

United States v. Whorley, 550 F.3d 326, 333 (4th Cir. 2008) (internal quotations and citations omitted).  The Supreme Court has explained that under certain circumstances this test should be applied less stringently:

> These standards should not, of course, be mechanically applied.  The degree of vagueness that the Constitution tolerates -- as well as the relative importance of fair notice and fair enforcement -- depends in part on the nature of the enactment.  Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be

---

[4] We assume, for purposes of our analysis, that Petitioners are bringing an as-applied challenge to section 137.51. Petitioners do not make clear whether they are bringing a facial or an as-applied challenge.  However, a facial challenge appears inapplicable in this case.  To make out a facial challenge, Petitioners would have to "demonstrate that the law is impermissibly vague in all of its applications."  Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 (1982).  That cannot be done here because "congested area" plainly covers densely populated urban settings.

> expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.

Vill. of Hoffman Estates, 455 U.S. at 498-99 (footnote call numbers omitted); see Greenville Women's Clinic v. Comm'r, S.C. Dep't of Health & Envtl. Control, 317 F.3d 357, 366 (4th Cir. 2002).

Petitioners cannot show that they lacked "a reasonable opportunity to understand what conduct [section 137.51] prohibits." Whorley, 550 F.3d at 333 (quotations and citation omitted). Because Towers warned that two or three houses may be considered a congested area, Petitioners had reason to believe that the residential area near the intersection of Swan Pond Road and Hollida Lane might be congested. They could have resolved any doubt by filing a congested area plan for that intersection and waiting for Towers's response. Furthermore, Petitioners have not tried to show that section 137.51 "authorizes or even encourages arbitrary and discriminatory enforcement," nor have they presented any evidence that the enforcement action against them was arbitrary. Id. (quotations and citation omitted). Therefore, Petitioners have failed to show that section 137.51 is unconstitutionally vague.

10

We next consider the ALJ's and Board's determination that Petitioners flew over a congested area. The decision below must be set aside if that determination is "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E); see North Carolina v. Fed. Aviation Admin., 957 F.2d 1125, 1128 (4th Cir. 1992). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Platone v. U.S. Dep't of Labor, 548 F.3d 322, 326 (4th Cir. 2008) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)).

In this case, the Board made clear that the question of what constitutes a "congested area" involves a case-by-case inquiry that considers all relevant circumstances:

> The term "congested area" will continue to be adjudicated on a case-by-case basis before this Board. The determination must take into consideration all circumstances, not only the size of an area and the number of homes or structures, but, for example, whether the buildings are occupied or people are otherwise present, such as on roads.

J.A. 276-77. This approach is consistent with the Board's prior case law. See Eby, 3 N.T.S.B. at 615 (determining that an area was congested after "[c]onsidering the size of the area and the number of homes, and the corresponding density of residences, and after viewing the aerial photographs"). Therefore, we must determine whether substantial evidence supports the ALJ's and

11

Board's finding that, given all relevant circumstances, the area near the intersection of Swan Pond Road and Hollida Lane was congested.

After carefully reviewing the record, we note that approximately thirty houses are located in the general vicinity of that intersection. The record further shows that Petitioners' flights passed over corner sections of that area. We therefore conclude that the area over which Petitioners flew could reasonably be considered congested based on substantial evidence in the record.

### III.

For the reasons stated above, we

AFFIRM.