**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1870**

CHRISTOPHER P. DOWNEY,

  Plaintiff - Appellant,

   v.

UNITED STATES DEPARTMENT OF THE ARMY; ERIK FANNING, Secretary
of the United States Department of the Army,

  Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria. Leonie M. Brinkema, District Judge. (1:14-cv-01503-LMB-TCB)

Argued: December 9, 2016                   Decided: April 13, 2017

Before GREGORY, Chief Judge, MOTZ, Circuit Judge, and Richard D. BENNETT,
United States District Judge for the District of Maryland, sitting by designation.

Affirmed by unpublished opinion. Chief Judge Gregory wrote the opinion, in which
Judge Motz and Judge Bennett joined.

**ARGUED**: Erin Jude Kuenzig, THOMAS MORE LAW CENTER, Ann Arbor,
Michigan, for Appellant. Antonia Marie Konkoly, OFFICE OF THE UNITED STATES
ATTORNEY, Alexandria, Virginia, for Appellees. **ON BRIEF**: Richard Thompson,
Erin E. Mersino, THOMAS MORE LAW CENTER, Ann Arbor, Michigan;
Samuel C. Moore, LAW OFFICE OF SAMUEL C. MOORE, PLLC, Alexandria,

Virginia, for Appellant. Dana J. Boente, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Chief Judge:

Lieutenant Colonel Christopher T. Downey appeals the district court's grant of summary judgment on his claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 *et seq.*, in favor of the United States Department of the Army and John M. McHugh, Secretary of the Department of the Army ("Appellees"), and dismissal of his due process claims. Downey alleged that the Army Board for Correction of Military Records (the "Board") arbitrarily and capriciously denied his request to remove a record from his personnel file that stated he was found guilty of assault. Downey also alleged that the procedures used to determine his guilt violated the Due Process Clause. For the reasons stated below, we affirm the district court's judgment.

I.

The district court's opinion sets forth the extensive procedural history of this case, so we do not relay it here. *See Downey v. U.S. Dep't of the Army*, 110 F. Supp. 3d 676 (E.D. Va. 2015). We recount only the relevant factual background.

On April 14, 2012, the 6th Squadron, 6th Cavalry, 10th Combat Aviation Brigade held a ball where Downey, Commander of the Brigade, was the commanding officer. During the ball, a soldier informed Downey of allegedly inappropriate behavior on the dance floor. The soldier stated that he saw Captain Katherine Robinson and Second Lieutenant Heather Parsons dancing and kissing. The soldier also stated that he believed the couple was being photographed.

3

Downey approached two individuals holding cameras who he believed were photographing the couple. Downey attempted to lower Specialist Jeremy Reuter's camera by pushing it down, but instead knocked the camera into Reuter's face. The camera struck Reuter in the nose, causing him to fall to the floor. Downey approached Robinson and Parsons and told them to "watch their behavior and what they were doing was unacceptable and placed them in a compromising situation." J.A. 98. When Downey left the dance floor, he spoke to Captain Thomas Jones, who saw what transpired, and Downey explained that he believed Reuter was taking inappropriate photographs of Robinson and Parsons. Downey explained that in 2011 a male officer in his unit videotaped several female officers who were showering and Downey's intention was to prevent any possible exploitation of Robinson and Parsons. Jones examined Reuters's photos and reported to Downey that he did not see any inappropriate pictures. In the meantime, Reuter was taken to the hospital and was diagnosed with a concussion and fractured nose.[1]

After Downey's exchange with Robinson and Parsons, Command Sergeant Major Patrick McGuire approached the couple and got into a heated discussion with Robinson, in which he allegedly called her a disgrace and an abomination. McGuire eventually pushed Robinson to the ground and walked away. The following evening, Downey spoke to both Parsons and Robinson. He told Parsons that the unit had to move past the

---

[1] It was later determined that Reuter did not have any facial bone fractures, but this information was not provided to the Board.

event, and told Robinson to forget the incident with McGuire and that if she reported it, her career would be adversely affected. Downey also told them he had nothing against their sexual orientation.

On April 18, 2012, Major General Mark A. Milley, Downey's superior officer, assigned Colonel Paul Schlimm to investigate the incidents at the ball. After a thorough investigation, in which Schlimm interviewed Downey, Reuters, Robinson, Parsons, McGuire, and several other officers who witnessed the events, Schlimm determined that Downey committed an "assault consummated by a battery." J.A. 138. Schlimm also found that Downey violated Army Directive 2011-01—the repeal of 10 U.S.C. § 654, commonly known as "Don't Ask, Don't Tell"—by enforcing the public displays of affection policy against Robinson and Parsons, but not against heterosexual couples engaged in similar behavior. [2] Schlimm also found that Downey may have engaged in obstruction of justice by advising Robinson not to report McGuire's conduct.

Based on Schlimm's recommendation, Major General Milley initiated nonjudicial punishment ("NJP") proceedings against Downey pursuant to Article 15 of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 815, for the offense of assault consummated by a battery. An Article 15 proceeding is a non-adversarial, summary proceeding at which a commanding officer may impose discipline on his subordinates "for minor offenses without the intervention of a court-martial." 10 U.S.C. § 815(b).

---

[2] Army Directive 2011-01 did not affect the enforcement of public displays of affection ("PDA") standards, as the policy is sexual orientation neutral. J.A. 341. PDA is generally prohibited. J.A. 350.

Service-members have the option to refuse an Article 15 proceeding and demand an adversarial court-martial. *Id.* § 815(a); *see Guerra v. Scruggs*, 942 F.2d 270, 272 (4th Cir. 1991). Courts-martial, which are nearly always presided over by lawyer-judges with counsel for both the prosecution and the defense, generally resemble judicial proceedings. *Middendorf v. Henry*, 425 U.S. 25, 31 (1976) (referring to general and special courts-martial); *accord* 10 U.S.C. § 816. Article 15 proceedings provide fewer procedural rights than trials by court-martial, but limit the nature of punishments imposed. *See* Dwight H. Sullivan, *Overhauling the Vessel Exception*, 43 Naval L. Rev. 57, 58–59 (1996) (identifying procedural rights not afforded during Article 15 proceeding, including legal representation, suppression of unconstitutionally obtained evidence, confrontation of one's accuser, and decision by a panel of disinterested service members); *see also Parker v. Levy*, 417 U.S. 733, 750 (1974) (noting that Article 15 proceedings imposed limited discipline, including suspension, reduction in pay grade, and arrest in quarters for not more than thirty days).

Upon notice of the Article 15 proceeding, Downey requested to speak to a military lawyer, who allegedly told him that if he demanded a court-martial, he would be required to hire a civilian lawyer. Downey chose to submit to the Article 15 proceeding and the military lawyer allegedly recommended that she not appear as a spokesperson on his behalf because he would seem weak. On May 30, 2012, during the Article 15 hearing, Milley determined that Downey was guilty of assault consummated by battery in violation of UCMJ Article 128. Milley found him not guilty of obstruction of justice and dismissed a disorderly conduct charge. Downey appealed Milley's assault finding, which

6

was denied on June 27, 2012. On June 4, 2012, Milley completed an officer evaluation report for Downey, giving him a satisfactory performance rating—a level below his usual "outstanding performance" rating—and noting that he was relieved of his command position due to his poor judgment at the ball. On June 8, 2012, Milley issued Downey letters of reprimand for the assault against Reuter and for violating Army Directive 2011-01. Milley also issued a letter that stated he lost confidence in Downey's ability to command the Brigade and relieved Downey from his position.

On August 16, 2013, Downey applied to the Board for removal of the Article 15 record. Downey presented several arguments in his petition, including: the elements of assault were not met because he used lawful force and the incident was an accident; there were no facts demonstrating that his hand or fist came in contact with Reuter; x-ray reports demonstrated that Reuter's nose was not fractured;[3] he was not given the right to present a full defense; Milley did not use the reasonable doubt standard when finding him guilty; the refusal to produce a transcript of the Article 15 hearing hindered his ability to file a meritorious appeal and obtain effective assistance of counsel; the letter of reprimand regarding the assault was not supported by the evidence because the majority of the Article 15 hearing discussed his alleged violation of Army Directive 2011-01;[4] the finding that he violated the directive was legally incorrect; the repeal of Don't Ask Don't

---

[3] Downey submitted an x-ray report showing that Reuter did not have a spinal fracture, but it made no mention of Reuter's nose. J.A. 88.

[4] Downey did not seek removal or correction of the letters of reprimand.

7

Tell was not an appropriate subject for a letter of reprimand because his conduct did not involve denying homosexuals the right to serve in the armed forces; Robinson and Parsons violated the PDA standard; he was not acting out of an intent to discriminate against the women, but to protect them from exploitation; the publicity surrounding the repeal of Don't Ask Don't Tell motivated the decision to find him guilty of assault; and he had an outstanding military career.

The Secretary of the Department of the Army, acting through the Board, is authorized to correct any Army military record when he "considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). An application for correction of a military record is considered by a panel of at least three Board members. 32 C.F.R. § 581.3(e)(3)(i). The Board members are charged with the responsibility to first "[r]eview all applications that are properly before them to determine the existence of error or injustice." *Id.* § 581.3(b)(4)(i). The Board will then recommend a correction if it determines that "the preponderance of the evidence shows that an error or injustice exists" in an applicant's records. *Id.* § 581.3(e)(3)(iii)(A). A denial of an application is a final action of the Board, *id.* § 581.3(g)(2)(i)(A), and the denial must be in writing, *id.* § 581.3(g)(1).

On October 21, 2013, the Board issued an opinion denying Downey's application. The Board stated that it considered all of the evidence submitted by Downey and the arguments in the brief submitted by his counsel. J.A. 24-29. The Board found that "[t]he evidence of record confirms [Downey] violated the UCMJ while serving as [a Lieutenant Colonel], in a leadership position and subsequently accepted NJP . . . for unlawfully

8

striking a Soldier on his face with a camera which he pushed into his face." J.A. 30-31. The Board also acknowledged that Downey "was provided a defense attorney, was given the right to demand trial by court-martial, and was afforded the opportunity to appeal the Article 15 through proper channels." J.A. 31. The Board concluded that the Article 15 proceeding was "conducted in accordance with law and regulation" and that "there is no evidence of record and [Downey] provides no evidence to show the [Article 15 record] is untrue or unjust." *Id.* Finding no error or injustice, the Board found "no reason" to remove the Article 15 record. *Id.*

On November 12, 2014, Downey brought this action against Appellees, alleging that the Board's decision was arbitrary and capricious and failed to address and correct due process violations during his underlying Article 15 proceeding (Counts I and II). Downey also alleged his Article 15 proceeding violated his Fifth Amendment right to due process (Counts III and IV). Appellees moved for summary judgment as to Counts I and II, and to dismiss Counts III and IV for failure to state a claim upon which relief could be granted. Downey filed a cross-motion for summary judgment as to Counts I and II. On June 19, 2015, the district court granted Appellees' motions and denied Downey's motion. This appeal timely followed.

II.

We first address the district court's judgment regarding the parties' cross-motions for summary judgment as to Counts I and II.

9

We review de novo the district court's grant of summary judgment, employing the same standard used by the district court. *Randall v. United States*, 95 F.3d 339, 348 (4th Cir. 1996). "A district court 'shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). When reviewing an appeal from cross-motions for summary judgment, this Court must separately review the merits of each motion, taking care to "resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion," *Defs. of Wildlife v. N.C. Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014), to ascertain "whether either of the parties deserves judgment as a matter of law," *id.* (quoting *Bacon v. City of Richmond*, 475 F.3d 633, 638 (4th Cir. 2007)).

Under the APA, this Court's review of a Board's decision is quite limited as the Board has broad authority to correct servicemembers' records. 10 U.S.C. § 1552(a); *Guerra v. Scruggs*, 942 F.2d 270, 273 (4th Cir. 1991). We will set aside the Board's decision only if it was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Randall*, 95 F.3d at 348. Because review of an agency's decision is narrow, the function of this Court is not to reweigh the evidence presented to the Board, make credibility determinations, or substitute its judgment for that of the agency. *See Randall*, 95 F.3d at 348; *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (considering an agency's ruling arbitrary and capricious if it "offered an explanation for its decision that runs counter to the evidence before the

agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."). Rather, this Court must determine "whether the conclusion being reviewed is supported by substantial evidence." *Randall*, 95 F.3d at 348 (quoting *Robbins v. United States*, 29 Fed. Cl. 717, 725 (1993)); *see Platone v. U.S. Dept. of Labor*, 548 F.3d 322, 326 (4th Cir. 2008) (stating substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

Primarily, Downey argues that the Board's decision was arbitrary and capricious because it failed to address or resolve all of his arguments and did not articulate a rational connection between its factual findings and legal conclusions. Downey states that the Board's decision failed to address his arguments concerning an x-ray report that demonstrated that Reuter's nose was not fractured, his defense that Reuter's injury was an accident, his claim that Army Regulations were not followed, and his assertion that the Article 15 proceeding was tainted by the appearance of unlawful command influence.[5]

The district court found that the Board's decision was not arbitrary and capricious given the substantial evidence supporting a finding that the Article 15 record was correct and should not be removed. The court further stated that the Board was not required to address in writing every argument raised in Downey's petition because the arguments

---

[5] UCMJ Article 37 "restricts the influence of higher authorities on the findings of any military proceeding"—commonly referred to as unlawful command influence—and "erects a safeguard against individual attempts to improperly sway" the commanding officer in an Article 15 proceeding. *(N G) v. United States*, 94 Fed. Cl. 375, 387 (2010).

would not have altered the outcome that substantial evidence supported the finding of guilt.

We agree with the district court's conclusion. Under the APA, an agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 350 (4th Cir. 2001) (quoting *State Farm*, 463 U.S. at 43). When addressing the adequacy of an agency's explanation, a reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transp. Inc. v. Arkansas-Best Freight Sys.,* 419 U.S. 281, 285 (1974). The agency's explanation need not be a "model of analytic precision." *Shalala*, 244 F.3d at 350 (quoting *Dickson v. Secretary of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995)). And while this Court may not supply a reasoned basis for the agency's action that the agency has not given, we must "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman*, 419 U.S. at 286.

Here, the Board's decision demonstrates adequate consideration of the evidence and Downey's claims and a rational conclusion that Downey failed to show that his Article 15 record was untrue or unjust and should be removed from his personnel file. In fact, the opinion began with a summary of Downey's arguments and the evidence he provided to the Board for consideration. The opinion then summarized the arguments in the brief submitted on his behalf by his counsel. The Board noted, for instance, Downey's arguments that he was not guilty, "[h]e used no unlawful force," "[h]is

intentions were not to harm" Reuter, Reuter's nose was not broken, Schlimm's investigation was "incomplete," and Milley's determination of his guilt "involved outside influence by matters not within the scope of the investigation." J.A. 24-25.

The Board also restated the factual findings in Schlimm's investigation report, including that Downey approached Reuter and "attempted to take away [Reuter's] camera and in his attempt, he knocked the camera into [Reuter's] face." J.A. 27. According to UCMJ Article 128, the elements of assault consummated by battery include "[t]hat the accused did bodily harm to a certain person" and "[t]hat the bodily harm was done with unlawful force or violence." J.A. 484. The Board concluded that "[t]he evidence of record confirm[ed]" that Downey committed an assault consummated by battery against Reuter by "unlawfully striking [Reuter] on his face with a camera which [Downey] pushed into his face," and that "[t]here is no evidence of record . . . to show that the [Article 15 record] is untrue or unjust." J.A. 30-31.

Further, when addressing Downey's arguments that Milley "did not conduct the [Article 15] hearing in a fair and impartial manner," J.A. 25, the Board stated that the Article 15 proceeding was "conducted in accordance with law and regulation," J.A. 31. The opinion detailed that Downey was provided with a defense attorney, given the right to demand a trial by court-martial, and afforded the opportunity to appeal the Article 15 decision through the proper channels. Finding no "error" or "injustice" during Downey's Article 15 proceeding, the Board concluded that "there [was] no reason to remove it from his record." J.A. 31.

13

It is evident from the Board's explanation that it considered Downey's claims. *See* J.A. 24-25, 28-29 (twice detailing Downey's arguments and evidence in support of his application to the Board); *see also Shalala*, 244 F.3d at 351 (finding that "nothing more is required" when a board's explanation is "fairly comprehensive" and demonstrates adequate consideration of relevant factors). Although the Board could have explained its reasons for rejecting Downey's claims in more detail and its decision may lack "ideal clarity," the Board's opinion nevertheless demonstrates a rational connection between its factual findings and its conclusion. *Bowman*, 419 U.S. at 286. As a result, we hold that the Board satisfactorily explained its rationale and its decision was not arbitrary and capricious.[6] Accordingly, we affirm the district court's grant of summary judgment.

---

[6] Downey also argues that the Board committed reversible error by incorrectly employing a clear and convincing burden of proof. Pursuant to 32 C.F.R. § 581.3(e)(2), the Board was instead required to evaluate Downey's claims of error and injustice "by a preponderance of the evidence." Though the Board erred by applying the wrong standard, the Board's mistake does not amount to reversible error. On appeal, Downey has the burden of demonstrating that the Board's error was prejudicial. *Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 253 (4th Cir. 2016) ("The harmless error rule applies to agency action because if the agency's mistake did not affect the outcome, it would be senseless to vacate and remand for reconsideration."). After extensive review of the evidence, the Board stated that "there is *no* evidence and [Downey] provides *no* evidence" to demonstrate that the Article 15 record was untrue or unjust. J.A. 31 (emphasis added). Even under the preponderance of the evidence standard, Downey would not have been able to meet his burden of proof. Downey has therefore failed to show any prejudice. As such, we agree with the district court's conclusion that the Board's error was harmless.

14

We now review the district court's dismissal of Downey's due process claims regarding his Article 15 proceeding. We review the grant of a motion to dismiss for failure to state a claim de novo. *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Downey argues that the district court erred in dismissing his due process claims. The district court concluded that Downey's claims were nonjusticiable because he failed to sufficiently allege a deprivation of a constitutional right or that Appellees violated applicable statutes or Army regulations. The district court based its conclusion on the justiciability doctrine set forth in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) (providing a four-factor test for reviewability of claims based on internal military affairs). *See also Williams v. Wilson*, 762 F.2d 357, 359 (4th Cir. 1985) (adopting *Mindes* test where a servicemember challenged the National Guard's empaneling of a selective retention board); *Guerra*, 942 F.2d at 276 (applying *Mindes* test).

Under the *Mindes* test, a service member seeking to sue the military over an internal military decision must demonstrate: "an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations," and "exhaustion of available intraservice corrective measures." *Williams*, 762 F.2d at 359 (quoting *Mindes*, 453 F.2d 197). Thus, the court

must first determine whether the allegations are sufficiently pled. *Mindes*, 453 F.2d at 202. If the allegations are "sufficient to withstand a motion to dismiss at the pleading stage," *id.*, and the servicemember exhausted available intraservice remedies, the court then weighs four factors to determine the justiciability of the allegations, *Williams*, 762 F.2d at 359. These factors include "(1) the nature and strength of the plaintiff's challenge to the military determination; (2) the potential injury to the plaintiff if review is refused; (3) the type and degree of anticipated interference with the military function; (4) the extent to which the exercise of military expertise or discretion is involved." *Id.* Here, the district court determined that Downey failed to satisfy the first threshold requirement of sufficiently pleading his due process claims.

We agree with the district court's conclusion. As the court noted, many of the allegations in the Amended Complaint directly contradict his due process claims. In the Amended Complaint, Downey alleged that during his Article 15 proceeding he was not able to fully present his arguments, the reasonable doubt standard was not used, he was denied the ability to collect and proffer evidence and witness testimony in his favor, and he did not make a knowing and voluntary choice to waive his right to a court-martial. Yet, Downey paradoxically alleged that he was able to call witnesses to testify in his favor and present arguments. *See, e.g.*, J.A. 396-97. He further alleged that he chose to proceed with the Article 15 proceeding after speaking with military counsel. *See Fairchild v. Lehman*, 814 F.2d 1555, 1559 (Fed. Cir. 1987) (stating that waiver of right to court-martial proceeding must satisfy the standards set forth in *Brady v. United States*, 397 U.S. 742, 748 (1970), which require awareness of direct consequences of waiver);

16

J.A. 438-39 (Army Regulation 27-10 explicitly provides servicemembers with a right to counsel to determine whether to demand a trial by court-martial).  The record also shows that Milley found Downey guilty beyond a reasonable doubt.  J.A. 49.

More importantly, Downey failed to plausibly allege an actual deprivation of any protected liberty or property interest.  *See Guerra*, 942 F.2d at 277 (4th Cir. 1991) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976))).  Downey argues he was removed from the National War College attendance list, relieved of command, and deprived of his good name and reputation.  Downey, however, cites no statute, regulation, rule, or other basis for establishing a property interest in his command position or attendance at the National War College.  *See id.* (stating servicemember had no property interest in continued service).  And assuming without deciding that Downey has a liberty interest in his good name and reputation, he cannot make out a due process claim because he cannot show that any statements made by the Army in connection with his Article 15 proceeding were untrue.  *See id.* at 278-79 (finding that servicemember had no liberty interest in his good name and reputation because he could not show that the stated reasons for his discharge were untrue).  Accordingly, the Court concludes that Downey's due process claims are nonjusticiable and affirms the district court's dismissal of the claims.

## IV.

For the foregoing reasons, the district court's judgment is

*AFFIRMED.*