**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 14-2415**

———————

DELTEK, INC.,

        Petitioner,

    v.

DEPARTMENT OF LABOR, Administrative Review Board,

        Respondent,

DINAH R. GUNTHER,

        Intervenor.

———————

On Petition for Review of an Order of the United States Department of Labor, Administrative Review Board. (13-068; 13-069)

———————

Argued: December 8, 2015         Decided: May 20, 2016

———————

Before AGEE and HARRIS, Circuit Judges, and Theodore D. CHUANG, United States District Judge for the District of Maryland, sitting by designation.

———————

Affirmed by unpublished opinion. Judge Harris wrote the majority opinion, in which Judge Chuang joined. Judge Agee wrote a dissenting opinion.

———————

**ARGUED**: Charles B. Wayne, DLA PIPER LLP (US), Washington, D.C., for Petitioner. Dean A. Romhilt, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent. Stephen Martin Kohn, KOHN, KOHN & COLAPINTO, LLP, Washington, D.C., for Intervenor.

**ON BRIEF:** M. Patricia Smith, Solicitor of Labor, Jennifer S. Brand, Associate Solicitor, William C. Lesser, Deputy Associate Solicitor, Megan E. Guenther, Counsel for Whistleblower Programs, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Dinah R. Gunther, a former employee of Deltek, Inc., alleges that Deltek fired her from her position as a financial analyst in retaliation for whistleblowing activity, in violation of the whistleblower protections of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A. An Administrative Law Judge ("ALJ") conducted a twelve-day hearing on Gunther's complaint, during which she heard testimony from multiple witnesses presenting two very different versions of the events immediately preceding Gunther's termination. Crediting Gunther's account and deeming Deltek's explanation for the firing pretextual, the ALJ found Deltek liable for retaliation. And after additional evidence and briefing were presented, the ALJ assessed damages against Deltek, including an award of four years of front pay to Gunther. The Department of Labor's Administrative Review Board ("ARB" or "Board") affirmed.

Deltek now appeals, asking us to reverse the finding of retaliation and to overturn the front pay award. But we owe deference to the findings of the ALJ and the Board and must uphold them so long as they are supported by substantial evidence and reached through application of the correct legal standards. Under that deferential standard, we affirm.

Deltek, a Virginia-based software provider, hired Gunther in October 2008 as a financial analyst in its Information Technology ("IT") Department.[1]   Gunther, a former executive assistant and workflow manager, had been unable to move into a finance position with her last employer because she lacked a college degree.   Once hired by Deltek, she planned to take advantage of the company's tuition reimbursement program and work toward a degree, hoping for a promotion to senior financial analyst.

Deltek uses Verizon Business ("Verizon") as a vendor for information technology services.   Deltek's IT Department commonly raised billing disputes with Verizon, as permitted by the companies, with mixed results; some, but not all, of the disputed amounts were credited to Deltek's account.   Almost from the start of her Deltek employment, Gunther was concerned about the lack of clear procedures and supporting documentation for invoicing generally, and about Verizon invoicing in particular.

---

[1] The facts of this case are recounted in detail in the ALJ's two extensive opinions, totaling more than 70 pages.   See Gunther v. Deltek, Inc., No. 2010-SOX-00049 (Dep't of Labor July 31, 2012), J.A. 23–56; Gunther v. Deltek, Inc., No. 2010-SOX-00049 (Dep't of Labor June 5, 2013) ("ALJ Supplemental Decision and Order"), J.A. 58–96.   We review here the facts most relevant to this appeal, as found by the ALJ.

Ultimately, Gunther would become convinced that Deltek employees were deliberately subjecting Verizon invoices to baseless disputes in an effort to hide a telecommunications budget shortfall and obfuscate the true financial condition of the IT Department.

Gunther came to this conclusion in part through her work with Chris Reynolds, a Project Manager in the IT Department who had concerns similar to her own. Reynolds, a former Verizon employee, was responsible for managing the relationship between Deltek and Verizon, and his duties included reviewing billing disputes between the companies, a task with which Gunther assisted. Reynolds determined that Deltek was raising a number of unjustified billing disputes; at the hearing before the ALJ, presented with six disputes raised by Deltek, Reynolds opined that five were baseless. Reynolds shared his views with Gunther, and by the spring of 2009, Gunther believed that they had "uncovered massive fraud and a pattern of abusing the dispute process as to the Verizon invoices." J.A. 31.

Gunther's early efforts to bring the Verizon problem to the attention of management were, in her view, unsuccessful, and led to hostility from her immediate supervisor and negative changes to her work status. By April 2009, Gunther was ready to take more formal action. On April 20, 2009, she hand-delivered a letter complaint to Deltek's General Counsel, David Schwiesow,

5

and submitted the same letter to Deltek's audit committee, indicating by a "cc" that a copy also had been sent to the U.S. Securities and Exchange Commission ("SEC"). Gunther's letter reported that Deltek employees were raising fraudulent billing disputes with Verizon to avoid timely payment of fees and conceal a large budget variance from Deltek management, auditors, and shareholders, as well as the SEC. Gunther also alleged that she had been ignored or punished for raising these issues with her supervisors. Reynolds filed a similar complaint.

Schwiesow, the General Counsel, took immediate action, informing Deltek's CEO of the complaints and then meeting separately with Gunther and Reynolds. In his meeting with Gunther on April 21, Schwiesow assured Gunther that her complaints would be taken seriously and asked her to gather information. And Deltek did conduct an investigation, ultimately finding no improper activity or retaliation by Deltek employees.

Gunther, however, was not entirely reassured by her meeting with Schwiesow. After seeing employees shredding documents, she became concerned about the integrity of documents relevant to her complaint, and began emailing some of them to her personal email account, which she shared with her husband. She also

became increasingly upset about what she viewed as her mistreatment at the hands of her supervisor and other coworkers.

The result was a paid leave of absence for Gunther. On May 18, 2009, Gunther told Holly Kortright, Deltek's Vice President of Human Resources, that she was experiencing stress and other medical issues that were affecting her work, and Kortright offered her a paid temporary leave. Gunther accepted by email, laying out certain conditions — including her right to receive full compensation and benefits and to terminate the leave at her discretion with 24 hours' notice to Deltek — to which Kortright agreed. Shortly after her leave began in May, Gunther filed a complaint with the Occupational Safety and Health Administration ("OSHA"), alleging retaliation for whistleblowing activities in violation of the Sarbanes-Oxley Act.

Counsel for Gunther and Deltek began negotiating a settlement that would result in Gunther's separation from Deltek. But the parties had trouble agreeing on terms. And in the meantime, Gunther became concerned about the status of her employment at Deltek, given that she received both a notice of continuation of health coverage under the Consolidated Omnibus Budget Reconciliation Act, or COBRA, suggesting that her health benefits had been terminated, and a separate notice that Deltek had reversed the deposit of a recent paycheck.

7

Things came to a head on Saturday, October 24, when Gunther, after directing her counsel to end settlement negotiations, sent an email to Kortright saying that Deltek was in arrears on her employee benefits and paychecks and that she would be reporting to work at 9:00 a.m. on Monday, October 26. At 12:18 a.m. on October 26, just nine hours before Gunther was to report to Deltek, Schwiesow responded with an email telling Gunther that because she was represented by counsel, Deltek would be unable to discuss her employment with her if she came into the office.

Nevertheless, Gunther — who testified that she did not recall reading Schwiesow's midnight email before leaving for work — returned to Deltek on Monday, October 26, setting in motion the events most critical to this case, and most contested by the parties. This much is undisputed: Gunther, with her husband accompanying her in a separate vehicle, arrived at Deltek and then went alone to the Human Resources Department, where she was told by Kortright's assistant that she would have to wait for Kortright's arrival. After 15 or 20 minutes, Gunther met with Kortright and Deltek's in-house counsel Salman Ahmad, and Ahmad told Gunther that he could not speak with her about her employment because she was represented by counsel. In response to Gunther's questions, Ahmad assured Gunther that she still had a job with Deltek, but also told her that she could

8

not return to work that day.  After the meeting, Gunther left the building and, in the parking lot, responded to questions from her husband, who was holding a video camera, while Kortright and Ahmad watched the scene from the window of Kortright's office.  Finally — and, as it turns out, critically — Gunther secretly made an audio recording of the meeting with Ahmad and Kortright.

Beyond that, the parties' accounts diverge.  According to Deltek, and in particular the testimony of Kortright, Gunther's behavior on October 26 was "confrontational" and "disruptive." Gunther intimidated Kortright's assistant by standing and staring at her, refusing to sit in a conference room while she waited for Kortright; she was "confrontational" and "demanding," using a "strong tone," in her meeting with Kortright and Ahmad; and her interaction with her husband in the parking lot both blocked other employees from entering and indicated that Gunther had no intention of actually returning to work.  But after listening to the audio tape made by Gunther and reviewing the evidence, the ALJ rejected that characterization, finding no evidence that Gunther behaved in an inappropriate or threatening manner or that her parking-lot interview with her husband caused any disruption.

On the next day, October 27, 2009, Kortright sent Gunther a letter terminating her employment at Deltek.  According to the

9

letter, Gunther was being terminated because of her "disruptive and very concerning" behavior at Deltek the prior day, and specifically her "confrontational" posture toward Ahmad and the "disruptive" videotaped interview with her husband. J.A. 41–42. That brought to an end the employment relationship between Gunther and Deltek, and Gunther promptly amended her OSHA complaint to include her termination as a retaliatory action.

Even after the termination, the parties' relationship continued to deteriorate. In November 2009, Gunther and her husband each sent letters to Kortright and Deltek's CEO, respectively, which Deltek characterized as "threatening" and "aggressive." J.A. 71. And in the course of its post-termination investigation and preparation for litigation, Deltek discovered not only that Gunther had emailed company documents to her personal email account, but also that she had made secret audio recordings of certain Deltek meetings and exchanged allegedly derogatory instant messages with Reynolds.

## B.

In July 2010, the Assistant Regional Administrator for OSHA ruled on Gunther's OSHA complaint, finding that there was no reasonable cause to believe that Deltek had violated the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, which protects from retaliation whistleblowers who report certain kinds of fraud committed by publicly traded companies. Gunther filed a notice

10

of objection and requested a de novo hearing in front of an ALJ. See 29 C.F.R. § 1980.106 (2010).

Following a twelve-day hearing on liability, the ALJ, after dismissing all individual Deltek employees from the case, issued a lengthy decision and order finding that Deltek had retaliated against Gunther in violation of the Sarbanes-Oxley Act. See Gunther v. Deltek, Inc., No. 2010-SOX-00049 (Dep't of Labor July 31, 2012), J.A. 23–56. As the ALJ explained, to succeed on her Sarbanes-Oxley retaliation claim, Gunther was required to show by a preponderance of the evidence that (1) she had engaged in protected whistleblowing activity, (2) Deltek was aware of her protected activity, (3) she suffered an unfavorable personnel action, and (4) her protected activity was a "contributing factor" in the unfavorable action. See Jones v. Southpeak Interactive Corp. of Del., 777 F.3d 658, 668 (4th Cir. 2015); 29 C.F.R. § 1980.104(e) (2012). If Gunther could make that prima facie showing, then Deltek could avoid liability only by proving by clear and convincing evidence that it would have taken the same adverse action even in the absence of the protected activity. See Feldman v. Law Enf't Assocs. Corp., 752 F.3d 339, 345 (4th Cir. 2014).

On the first element of Gunther's case, the ALJ found that Gunther engaged in two forms of protected whistleblowing activity: the letter complaint filed with Deltek management and

11

the SEC in April 2009, and the original OSHA complaint of May 2009. Deltek did not dispute that the filing of a formal complaint or participation in OSHA proceedings generally would constitute protected whistleblowing activity. But for her reports to be protected, as the ALJ explained, Gunther also would need both a "subjective" belief and an "objectively reasonable" belief that the conduct she complained of was illegal, and Deltek argued that Gunther had insufficient education and experience to make such an assessment. The ALJ disagreed, finding that it was clear from the record that Gunther had a subjective belief that Deltek was engaged in fraud, and that as a result of her collaboration with and reliance on the more experienced Reynolds, Gunther's belief also was objectively reasonable.

The ALJ had no difficulty determining that Gunther had satisfied the second element of her case, showing that Deltek was aware of her April 2009 letter complaint (filed with Deltek management) and her May 2009 OSHA complaint (naming Deltek). The ALJ also found it clear that Gunther's termination was an adverse action, satisfying the third element.

On the fourth element, that Gunther's protected activity was a "contributing factor" in her termination, the ALJ recognized that proximity in time is sufficient to raise an inference of causation, and found that Gunther was terminated

12

almost immediately after the breakdown of the settlement negotiations precipitated by her OSHA complaint. The ALJ also made a finding that the reason for the termination offered by Deltek — Gunther's "egregious" behavior when she came to work on October 26 — was pretextual. J.A. 52. After listening to Gunther's audio recording of the events of that day and reviewing the record, the ALJ found that Gunther was not in fact "confrontational" or rude, and that there was no evidence that Gunther "ever took any actions in the workplace toward other employees that were inappropriate or threatening" or that Gunther and her husband had caused any disturbance at Deltek on October 26. J.A. 52-53. In short, the reasons offered by Deltek for Gunther's termination were "contradicted by [Gunther's] tape" and unsupported by the record. J.A. 53.

Accordingly, Gunther satisfied the final element of her prima facie case. And because the ALJ already had rejected Deltek's proffered explanation for Gunther's termination as pretextual, Deltek could not rebut that case by proving — by clear and convincing evidence or, as the ALJ noted, under any standard — that it would have fired Gunther even in the absence of her protected activity. Deltek therefore was liable for retaliation.

After considering additional evidence and briefing by the parties, the ALJ issued a supplemental decision and order

13

awarding damages to Gunther. Gunther v. Deltek, Inc., No. 2010-SOX-00049 (Dep't of Labor June 5, 2013) ("ALJ Supplemental Decision and Order"), J.A. 58-96. Applying the mandate of the Sarbanes-Oxley Act that an employee who prevails on a retaliation claim "shall be entitled to all relief necessary to make the employee whole," J.A. 64 (quoting 18 U.S.C. § 1514A(c)(1)), the ALJ awarded Gunther back pay and benefits and also, because the parties agreed that Gunther should not be reinstated at Deltek, four years of front pay — six years less than the ten years Gunther was seeking. The front pay award was based on the ALJ's finding that without a college degree, it was unlikely that Gunther could obtain a job comparable to her financial analyst position at Deltek. But four years of front pay combined with a restoration of tuition reimbursement benefits, the ALJ concluded, would be sufficient to make Gunther "whole," allowing her to complete an undergraduate degree and find a job similar to the one she held with Deltek.

The ALJ also rejected Deltek's argument that its liability should be limited under the after-acquired evidence doctrine to the brief time period between Gunther's firing and Deltek's discovery of misconduct for which it would have terminated Gunther: the post-termination letters to Deltek from Gunther and her husband, Gunther's recording of Deltek meetings and forwarding of Deltek documents to her personal email account,

14

and disparaging instant messages between Gunther and Reynolds. On the record before her, the ALJ found, Deltek had not shown that any of that conduct would have justified or in fact led to Gunther's termination had Deltek known of it earlier, rendering the after-acquired evidence doctrine inapplicable.

Deltek appealed to the ARB.[2] The Board affirmed, holding that both the liability finding and the damages award were supported by substantial evidence and that the ALJ's legal conclusions were in accordance with law. Gunther v. Deltek, Inc., Nos. 13-068, 13-069, 2014 WL 7227263 (Dep't of Labor Nov. 26, 2014) ("ARB Final Order"), J.A. 14–18. Deltek timely appealed the Board's judgment to this Court.

## II.

### A.

Our review of the Board's decision is limited. Under the Administrative Procedure Act, which governs Sarbanes-Oxley retaliation claims,[3] we must affirm the Board's decision unless it is "arbitrary, capricious, an abuse of discretion, or

---

[2] Gunther cross-appealed certain determinations by the ALJ. Those issues are not relevant to this appeal.

[3] The whistleblower retaliation provision of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, incorporates the rules and procedures of 49 U.S.C. § 42121(b), which in turn incorporates the Administrative Procedure Act's standard of review in cases like this, 5 U.S.C. § 706.

otherwise not in accordance with law," or is "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E); see Platone v. U.S. Dep't of Labor, 548 F.3d 322, 326 (4th Cir. 2008). We defer to the Board's interpretation of § 1514A of the Sarbanes-Oxley Act. See Welch v. Chao, 536 F.3d 269, 276 (4th Cir. 2008); see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843–44 (1984). And so long as the Board's findings are "supported by substantial evidence and [] reached based upon a correct application of the relevant law," we will uphold them. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). We also defer to the factual findings of the ALJ, as affirmed by the Board, if they are supported by substantial evidence. Platone, 548 F.3d at 326. And in reviewing for substantial evidence, our role is not to "substitute our judgment" for that of the ALJ or the Board; "we do not undertake to re-weigh conflicting evidence [or] make credibility determinations." Craig, 76 F.3d at 589. Rather, the "substantial evidence" standard requires only that there be in the record "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Platone, 548 F.3d at 326 (internal quotation marks omitted).

**B.**

Deltek challenges the Board's liability finding on two grounds, arguing that the ALJ and the ARB erred first in holding

16

that Gunther engaged in protected activity and then in finding that her protected activity was a "contributing factor" in her termination. Because substantial evidence supports the ALJ's determination, affirmed by the Board, that Gunther complained of conduct that she reasonably believed to be illegal and that her complaints contributed to her termination, we affirm.

**1.**

As discussed above and explained by the ALJ, Gunther's April 2009 letter complaint and May 2009 OSHA complaint constituted "protected activity" under the Sarbanes-Oxley Act only if they were based on her "reasonable belief" that the Deltek conduct she was reporting was in violation of the securities laws and regulations identified by the statute. See 18 U.S.C. § 1514A(a)(1). And as the ALJ recognized, that "reasonable belief" standard has both a subjective and an objective component: Gunther must show that she subjectively believed Deltek's conduct to be illegal, and that her belief was "objectively reasonable." See Welch, 536 F.3d at 275. The ALJ determined, in a finding affirmed by the Board, that Gunther satisfied that standard, and we find no fault with her analysis.

There is ample record evidence to support the ALJ's finding that Gunther, who raised her concerns early and often, both informally and formally, and even in the face of what she perceived as adverse treatment, genuinely believed Deltek to be

17

violating the law. Deltek's principal argument is that any subjective belief Gunther may have had was not "objectively reasonable," because without a college degree or relevant work experience, Gunther lacked sufficient knowledge to make that judgment. But the ALJ rejected that contention, determining that in forming her belief Gunther reasonably relied on her close dealings with Reynolds, who did have extensive experience in Verizon invoicing. Consideration of what Gunther learned from Reynolds was consistent with governing law, which, in evaluating objective reasonableness, focuses on the particular "factual circumstances" of the putative whistleblower, see Lockheed Martin Corp. v. Admin. Review Bd., 717 F.3d 1121, 1132 (10th Cir. 2013), which may include what he or she learns from coworkers, see, e.g., Mahony v. KeySpan Corp., No. 04 CV 554 SJ, 2007 WL 805813, at *1-2, 6 (E.D.N.Y. March 12, 2007) (reasonable for employee, who had taken only a few accounting classes, to rely on judgment and expertise of more experienced employee in forming belief that unlawful conduct was occurring). And there is substantial evidence to support the ALJ's finding, affirmed by the ARB, that Gunther in fact relied on Reynolds, who was himself a "credible, convincing witness at the hearing," J.A. 48.

Deltek's more sustained argument is that the ALJ and the Board erred when they found the necessary causal link between Gunther's 2009 letter complaint and 2009 OSHA complaint, on the one hand, and her termination, on the other. Again, we disagree. The ALJ and the Board properly applied the Sarbanes-Oxley standard for causation — which is not a high one — to factual determinations supported by substantial record evidence, and we therefore affirm.

As both the ALJ and the Board explained, to satisfy the "causation" element of her prima facie case, Gunther had to show only that her protected activity "contributed to" her termination. 49 U.S.C. § 42121(b)(2)(B)(i). The "contributing factor" standard, we have recognized, is a "broad and forgiving" one, Feldman, 752 F.3d at 350, distinctly more protective of plaintiffs than the familiar McDonnell Douglas framework applied in Title VII cases, see Araujo v. N.J. Transit Rail Operations, Inc., 708 F.3d 152, 158 (3d Cir. 2013). Gunther could satisfy this "rather light burden" by showing that her protected activities "tended to affect [her] termination in at least some way," whether or not they were a "primary or even a significant cause" of the termination. Feldman, 752 F.3d at 348.

In this case, application of the "contributing factor" standard turns critically on one key finding by the ALJ,

19

affirmed by the Board: that the explanation proffered by Deltek for Gunther's termination was pretextual — or, more colloquially, not true. Deltek's position, tracking Kortright's termination letter to Gunther, is that Gunther was fired not for whistleblowing activity, but as a result of her "egregious[ly]" disruptive and confrontational conduct at Deltek on October 26, 2009. J.A. 52. But after a painstaking review of the evidence, and having listened to Gunther's audio recording of the day's events "more than once" and observed Gunther's demeanor at the twelve-day hearing, the ALJ rejected that contention as "contradicted by the tape" and unsupported by the evidence. J.A. 52–53 & n.29. Gunther was not, as Deltek alleged, "confrontational"; instead, she was "[a]t all times . . . calm, quiet, and (although she repeated herself) polite." J.A. 52. There was no evidence that Gunther "ever took any actions in the workplace toward other employees that were inappropriate or threatening." J.A. 53. And even the alleged parking-lot "disruption" turned out to be unsupported by the record, which included "no testimony or other evidence" that Gunther and her husband actually blocked traffic or hampered pedestrians outside the Deltek offices. J.A. 52-53.[4]

---

[4] The ALJ did believe that Gunther's decision to return to work on October 26, without giving Deltek more notice and obtaining permission, was "ill advised." J.A. 52. But she also

That finding, affirmed by the Board, is supported by substantial evidence and entitled to deference. Over the course of a twelve-day hearing, the ALJ had ample opportunity to evaluate the credibility of the witnesses before her, and to assess their testimony in light of the audio tape of the October 26 meeting. Particularly when a factual finding rests on a credibility determination, it "should be accepted by the reviewing court absent exceptional circumstances" — where, for instance, it rests on "an inadequate reason or no reason at all" or is contradicted by other findings of fact. N.L.R.B. v. CWI of Md., Inc., 127 F.3d 319, 326 (4th Cir. 1997) (internal quotation marks omitted). Here, the ALJ fully explained her finding, pointing to record evidence. Deltek cannot show the kind of "exceptional circumstances" that would allow us to set aside the ALJ's finding of pretext, as affirmed by the Board. See, e.g., id.; Craig, 76 F.3d at 589 (on substantial evidence review, court does not "re-weigh conflicting evidence" or "make credibility determinations").

And in light of that finding, Deltek's arguments on appeal are unavailing. Deltek's principal claim is that the ALJ and

_____

found that Gunther's premature return was not a basis for Gunther's termination — a finding amply supported by the fact that Gunther retained the right to end her temporary leave at her discretion — and that Deltek had not argued otherwise. See also ARB Final Order, 2014 WL 7227263, at *2.

21

the Board improperly applied the law by failing to recognize that a "legitimate intervening event" — here, Gunther's confrontational and disruptive conduct on October 26 — can "sever" a causal connection between protected activity and a subsequent adverse employment action, see Feldman, 752 F.3d at 348. But the ALJ and the Board had no occasion to apply that doctrine, given their finding that there was no "legitimate intervening event" because the egregious behavior identified by Deltek had not in fact occurred. Similarly, the ALJ and the Board did not, as Deltek would have it, impermissibly second-guess an employer's judgment as to the wisdom of terminating employees who threaten workplace safety or comfort. Rather — and entirely appropriately — they evaluated the truth of Deltek's allegation that Gunther was in fact such an employee and found the claim pretextual.

Finally, Deltek appears to argue that there is simply no evidence that Gunther's April 2009 letter complaint or May 2009 OSHA complaint was a "contributing factor" to her termination, and that the ALJ improperly relied only on an attenuated chain of "but-for" causation to determine otherwise. But here again, Deltek's argument founders on the finding of pretext, which is itself circumstantial evidence of causation. See Bechtel v. Competitive Techs., Inc., No. 09-052, 2011 WL 4915751, *7 (Dep't of Labor Sept. 30, 2011) ("[I]f a complainant shows that an

22

employer's reasons for its action are pretext, he or she may, through the inferences drawn from such pretext, meet the evidentiary standard of proving by a preponderance of the evidence that protected activity was a contributing factor."); cf. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) (proof of pretext is a form of circumstantial evidence probative of intentional discrimination that "may be quite persuasive"). Moreover, proximity in time, as the ALJ explained, also is sufficient to raise an inference that protected activity contributes to an adverse action. See Feldman, 752 F.3d at 348. And while six months separated Gunther's whistleblowing complaints in April from her termination in October, the termination did come, the ALJ found, as soon as negotiations around those complaints ended and it became apparent that Deltek could not otherwise settle its conflict with Gunther. Cf. King v. Rumsfeld, 328 F.3d 145, 151 & n.5 (4th Cir. 2003) (even extended period of time between protected activity and adverse action may demonstrate causation where adverse action occurred at "the natural decision point").[5]

---

[5] That the ALJ relied on both these factors in finding causation is established with "reasonable clarity," Greater Boston Television Corp. v. FCC, 444 F.2d 841, 851 (D.C. Cir. 1970), we think, by the fact that both are analyzed in the "Causal Relationship" section of her opinion. J.A. 51-54. This is not a case, in other words, in which we need "guess" as to whether the ALJ deemed her pretext finding relevant to

23

Again, the question before us is not whether the record demands the conclusion that Gunther's whistleblowing activity "contributed to" her termination, but only whether substantial evidence supports the determination of the ALJ and the Board that Gunther satisfied that forgiving test. See, e.g., Craig, 76 F.3d at 589 (where "evidence allows reasonable minds to differ," a reviewing court must defer to an agency determination under the substantial evidence standard). Under that standard of review, we have no cause to disturb the determination of the ALJ, as affirmed by the Board, that Gunther made a prima facie showing that her April 2009 letter complaint and May 2009 OSHA complaint contributed to her termination by Deltek.[6]

_____

causation, Greater Boston, 444 F.2d at 851, or "substitut[e]" a factor of our own that the ALJ has not considered, cf. SEC v. Chenery Corp., 332 U.S. 194, 196 (1947). Parsing the ALJ's language, our dissenting colleague argues that the ALJ tied her pretext finding to the wrong part of the causation inquiry. But that cuts the analysis too fine. In reviewing an agency's reasoning, we demand not "ideal clarity," Greater Boston, 444 F.2d at 851, but only a discernible path, id., or "rational bridge" between record findings and legal conclusions, Cordova v. Holder, 759 F.3d 332, 340 (4th Cir. 2014). It is enough here that the ALJ required Gunther to "establish[] a causal relationship by a preponderance of the evidence," J.A. 51, and in deciding whether she had met that burden, properly took into account not only the events leading up to Gunther's firing but also Deltek's pretextual explanation for that firing, J.A. 52–53.

[6] For much the same reason, Deltek cannot prevail on its alternative argument that even if Gunther made out a prima facie case of retaliation, it rebutted that showing with clear and

24

## c.

Deltek separately challenges the damages award to Gunther. First, Deltek argues that the ALJ and the Board erred by failing to apply the after-acquired evidence doctrine, limiting Deltek's liability for damages because evidence discovered after Gunther's termination would have led to her firing had the company known of it earlier. Second, Deltek objects to the award of four years of front pay as unduly speculative and without a proper evidentiary basis. Again, we think that the determinations of the ALJ and the Board are supported by substantial evidence and consistent with law, and we therefore affirm.

## 1.

As the ALJ and the Board recognized and all parties agree, the after-acquired evidence doctrine applies in Sarbanes-Oxley cases.

> Under this doctrine, reinstatement or front pay is
> inappropriate if an employer discovers evidence of
> misconduct after it has wrongfully terminated an

---

convincing evidence that it "would have taken the same personnel action in the absence of the protected activity," Feldman, 752 F.3d at 345 (internal quotation mark omitted). In support of this claim, Deltek again points only to Gunther's October 26 conduct as an explanation for her termination. As the ALJ determined, given the finding that Deltek's explanation was pretextual, Deltek by definition could not show by clear and convincing evidence (or even a lesser standard of proof) that it would have terminated Gunther for that reason.

25

employee if the misconduct, standing alone, would have justified terminating the employee had the employer known of it at the time of discharge. In such an instance, an employer is only liable for back pay from the date of unlawful discharge to the time this new evidence is discovered.

ALJ Supplemental Decision and Order, J.A. 65 (citing McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352 (1995)).

To prevail, an employer must show by clear and convincing evidence that it would have terminated the employee when it discovered the misconduct in question. 49 U.S.C. § 42121(b)(2)(B)(ii), (iv) ("Relief may not be ordered . . . if the employer demonstrates by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of that behavior."); Ameristar Airways, Inc. v. Admin. Review Bd., 771 F.3d 268, 273 (5th Cir. 2014). The ALJ found that Deltek failed to offer sufficient evidence that the after-acquired evidence doctrine applied, and the ARB affirmed.[7] And Deltek now faces an even higher burden on appeal: it must show that this finding was unsupported by substantial evidence or, put differently, that there could be no reasonable difference of opinion as to whether Deltek had met the clear and convincing threshold. See Platone, 548 F.3d at 326 (substantial

---

[7] Neither the ALJ nor the Board referred expressly to the clear and convincing standard in applying the after-acquired evidence doctrine. To the extent that either applied the less demanding preponderance of the evidence standard, such an error could have worked only in Deltek's favor.

26

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Deltek cannot satisfy that exacting standard.

Deltek points first to its discovery, post-termination, that Gunther had emailed certain Deltek documents to her home email account, shared by her husband, in violation of Gunther's employment contract and Deltek policies. In connection with that claim, the ALJ recognized Gunther's understanding that Schwiesow, Deltek's General Counsel, had directed her to collect information to support her complaint. And the ALJ made specific findings, affirmed by the Board, that Gunther forwarded to her home account only documents that were relevant to her whistleblowing reports; that when she did so, she had a reasonable concern that the documents might be shredded by Deltek employees or otherwise destroyed; and that Gunther's motivation for forwarding the documents was "to support her [Sarbanes-Oxley] allegations." J.A. 68-69. Distinguishing cases like JDS Uniphase Corp. v. Jennings, 473 F. Supp. 2d 697, 703-04 (E.D. Va. 2007), in which courts had deemed employees unprotected when they "indiscriminately misappropriated documents containing proprietary information," J.A. 68, the ALJ concluded, and the ARB agreed, that Deltek had not made the requisite showing that Gunther's activity would have justified her termination.

On this record and in light of the specific factual findings of the ALJ and the Board, we see no reversible error. Deltek contests the ALJ's factual findings, but the ALJ cited ample evidentiary support for her conclusions. And under those narrow factual circumstances, we agree that Gunther's effort to protect selected relevant documents from what she reasonably believed was a risk of destruction, on what she understood to be instructions from Deltek's General Counsel, would not have justified her termination. Indeed, it is perhaps to Deltek's credit that it has not offered much by way of evidence that it would have fired Gunther, or any other employee, for limited efforts to document what is reasonably believed to be fraud: all we have in this record are Deltek's written policies and Schwiesow's self-serving testimony that their violation would have led to termination, without any evidence of similar circumstances under which Deltek had fired employees or otherwise enforced its policies against them. Accordingly, we defer to the determination of the ALJ and the Board that Deltek has not made the requisite showing under the after-acquired evidence doctrine.

We also find that substantial evidence supports the determination of the ALJ, affirmed by the Board, that Deltek did not meet its burden of showing that it would have terminated Gunther for any of the other misconduct it identifies. As to

28

Gunther's surreptitious audio recording of Deltek meetings, we have no reason to question the ALJ's finding that Deltek failed to cite any company policy or law prohibiting the recordings, and that Schwiesow's testimony that "this kind of action would not be tolerated" was by itself insufficient to meet Deltek's burden of proof.  J.A. 66.  Similarly, in the absence of record evidence that Deltek had terminated other employees for sending instant messages or that no other employee had sent comparable messages, we defer to the ALJ's finding that Gunther's instant messages were "trivial in nature" and so "petty" that Deltek could not show that an employee would have been terminated on that ground alone.  J.A. 70.

And finally, substantial evidence supports the rejection of the post-termination letters from Gunther and her husband as after-acquired evidence limiting damages.  As proof that those letters would have led to Gunther's termination, Deltek cited only its own characterization of the letters as threatening and aggressive.  But the ALJ reviewed Gunther's letter and concluded that it was neither threatening nor aggressive, and went on to "agree with [its] substance" because it did no more than request a retraction of the mischaracterizations in Kortright's termination letter.  J.A. 71.  The ALJ also reviewed the letter sent by Gunther's husband, and while criticizing its tone, found that its thrust was "simply [] to ask Deltek to refrain from

29

harassing his wife" and that it had been sent without Gunther's participation. J.A. 71. In light of that record, we have no reason to disturb the determination of the ALJ and the Board that Deltek has not met its significant burden of demonstrating that it would have terminated Gunther for the post-termination letters.

**2.**

Finally, Deltek challenges the ALJ's award, affirmed by the ARB, of four years of front pay totaling $300,352, along with tuition reimbursement benefits of $30,000. As the ALJ recognized, reinstatement rather than front pay is the "presumptive and preferred remedy" for unlawful discharge in whistleblower cases. See J.A. 80 (citing Hobby v. Ga. Power Co., Nos. 98-166 & 98-169, 2001 WL 168898 (Dep't of Labor Feb. 9, 2001)). But where, as here, pronounced animosity between the parties leads both of them to advocate against reinstatement, front pay may be an appropriate substitute, as the ALJ concluded.

Neither party has appealed the threshold determination that front pay and not reinstatement was the proper remedy in this case, and so the only issue before us is the calculation of the front pay award. Under Sarbanes-Oxley, a prevailing employee is entitled to "all relief necessary to make the employee whole," 18 U.S.C. § 1514A(c)(1), and front pay "is designed to place the

30

complainant in the identical financial position" that she would have occupied had she remained employed or been reinstated. Bryant v. Mendenhall Acquisition Corp., No. 04-014, 2005 WL 1542547, at *6 (Dep't of Labor June 30, 2005) (internal quotation mark omitted). By their nature, front pay awards are "speculative," but they "cannot be unduly so," id. at *7, and it is up to the employee to provide the "essential data necessary to calculate a reasonably certain front pay award." Id. (quoting McKnight v. Gen. Motors Corp., 973 F.2d 1366, 1372 (7th Cir. 1992)). But front pay is an equitable remedy, and given the "infinite variety of factual circumstances" that must be considered, front pay awards "rest in the discretion of the court in shaping the appropriate remedy." Duke v. Uniroyal Inc., 928 F.2d 1413, 1424 (4th Cir. 1991).

After laying out the legal standard governing front pay awards, Deltek devotes only a single, largely conclusory paragraph of its brief to its argument on damages.[8] But reading between the lines, Deltek appears to argue in part that the front pay award in this case is "unduly speculative" because

---

[8] Indeed, the Secretary of Labor urges that Deltek's "few sentences of argument" on this point are so lacking in specificity that they are insufficient to engage the issue on appeal. Br. for the Secretary of Labor at 60 (citing cases). We need not decide that question. Even assuming that Deltek's argument, supplemented by an additional paragraph in its reply brief, adequately presents the issue for appeal, we find no ground to disturb the ALJ's front pay award.

Gunther failed to provide the ALJ with "essential data" on which to rest a proper award. We disagree. Gunther submitted a proof of damages that included her annual salary and benefits, and the ALJ used that data to calculate the value of four years of front pay, essentially multiplying by four. As is always the case, "some speculation about future earnings [was] necessary," Barbour v. Merrill, 48 F.3d 1270, 1280 (D.C. Cir. 1995) (emphasis in original), but the ALJ and the Board made the reasonable choice to assume that Gunther would have continued to earn the same salary and benefits at Deltek had she not been unlawfully terminated. Indeed, the ALJ was careful to avoid undue speculation, rejecting Gunther's request to include in the award annual salary increases that were "not guaranteed." J.A. 83.[9]

---

[9] To the extent the dissent suggests that Gunther's obligation to provide "essential data" went beyond this showing, we must disagree. Under case law applying the "essential data" standard, Gunther amply met her burden of providing the ALJ with the basic data necessary to calculate a front pay award: "a proposed salary base" and "a definite duration for the award." See Barbour v. Merrill, 48 F.3d 1270, 1279, 1280 (D.C. Cir. 1995) (under "essential data" rule, where plaintiff established a "prima facie case" for front pay by providing a proposed salary base and duration, district court erred by denying front pay as unduly speculative); see also McKnight v. Gen. Motors Corp., 973 F.2d 1366, 1372 (7th Cir. 1992) (affirming denial of front pay in part because plaintiff failed to provide "essential data" such as "the amount of the proposed award" and "the length of time the plaintiff expects" the award to cover).

32

The heart of Deltek's claim, as we understand it, is that the choice of four years as the period for front pay (and perhaps the inclusion of tuition reimbursement benefits for those years) lacked an evidentiary or logical basis. Gunther sought ten years of front pay, arguing that it would take her at least that long to regain the professional status she lost when Deltek fired her. The ALJ rejected that claim, and found that Gunther could obtain a job comparable to the one she held at Deltek, and thus be "made whole," in four years during which she obtained a college degree. We think that determination, as affirmed by the Board, is supported both by the ALJ's reasoning and by substantial evidence in the record.

Based on record evidence that Deltek does not contest, the ALJ found that Gunther had worked in administrative and support positions prior to her time at Deltek, and that she had been unable to obtain a finance position from her prior employer because she lacked a college degree. The ALJ also found that Gunther again had been unable to secure a position as a financial analyst after her termination by Deltek and that she was "now unlikely to obtain" comparable employment without an undergraduate degree, "as she did not work for [Deltek] for a sufficient period of time to obtain on-the-job qualifications." J.A. 82. It followed, the ALJ concluded, that in order for Gunther to be "made whole" as required by statute, she would

33

need the opportunity to earn a college degree, which generally requires four years. Accordingly, the ALJ ordered Deltek to pay four years of front pay, along with the tuition-reimbursement benefits to which Gunther had been entitled when employed.

We cannot agree with Deltek that the ALJ provided no "logical basis" for her ruling, or that her determination is unsupported by substantial evidence. Deltek insists that, contrary to the ALJ's determination, Gunther could find work as a financial analyst without a college degree, pointing to its own decision to hire Gunther. But the ALJ considered and rejected that claim, finding that Gunther had been unable to obtain a financial analyst position either before or after her tenure at Deltek, and that Gunther remained unlikely to find such a position without a degree despite the fact that Deltek had been "willing to give [Gunther] a chance" that other employers had not. J.A. 81. And while the ALJ's assessment of Gunther's employment prospects necessarily involved some speculation, so too does Deltek's — and nothing in this record required the ALJ to adopt Deltek's optimistic prediction about Gunther's future as a financial analyst without a college degree. Cf. Barbour, 48 F.3d at 1280 (front pay should not be denied because "some speculation about future earnings is necessary, or because parties have introduced conflicting evidence" (emphasis in original)).

34

Gunther was entitled to be returned to "the identical financial position" that she would have occupied had she not been terminated unlawfully for protected whistleblowing activities. See Bryant, 2005 WL 1542547, at *6; 18 U.S.C. § 1514A(c)(1) (employee entitled to all relief necessary to be made whole). Consistent with that statutory mandate, the ALJ determined, and the Board agreed, that a four-year front pay award would return Gunther to the position she would have been in but for her termination — that is, employment as a financial analyst. The ALJ's rationale is fully explained and its findings, as affirmed by the Board, are supported by substantial evidence. Even if "reasonable minds might disagree regarding the amount," Traxler v. Multnomah Cnty., 596 F.3d 1007, 1014 (9th Cir. 2010) (affirming front pay award), the ALJ and the Board did not abuse their discretion in shaping the appropriate front pay remedy in this case. See Duke, 928 F.2d at 1424 (front pay awards rest in equitable discretion of court); Traxler, 596 F.3d at 1014 (holding that district court did not abuse discretion in setting front pay award).

## III.

For the foregoing reasons, we affirm the judgment of the Administrative Review Board.

AFFIRMED

35

AGEE, Circuit Judge, dissenting:

As the Supreme Court has stressed, Courts of Appeals in administrative agency cases must engage in a "meaningful review" to determine whether the record supports the agency's conclusions. Dickinson v. Zurko, 527 U.S. 150, 162 (1999). We are to undertake that review to assure we are "not simply rubber-stamping agency factfinding." Id. In my view, the majority fails in that obligation to engage in a meaningful review. Instead, it permits the administrative law judge's ("ALJ's") fallacious post hoc ergo propter hoc basis for causation to pass review and affirms a front pay award that is patently unreasonable and bears no relation to Gunther's prospective future losses. I therefore respectfully dissent.

I. Causation

The ALJ found that Gunther met her burden to prove causation solely based on the sequence of events leading to her termination of employment. In the ALJ's view, the timeline of events was in itself sufficient to prove a causal connection between Gunther's protected activity and subsequent termination because her "termination resulted after her return from a leave of absence that was precipitated by an investigation into the matters raised by the SEC [SOX] complaint." J.A. 52. The Administrative Review Board (the "Board") affirmed the ALJ's

36

finding of causation, reciting only the chronology of events with one following in time after the other with the last being Gunther's termination.  J.A. 15.

To see why the ALJ's causation finding is not simply erroneous but illusory, it is necessary to consider, not simply recite, the standard that appellate courts employ when reviewing an administrative agency decision.  The Court will set aside an administrative agency's conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  Welch v. Chao, 536 F.3d 269, 276 (4th Cir. 2008) (quoting 5 U.S.C. § 706(2)(A))[1]; Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (explaining that deference is owed only where the ALJ's finding was "supported by substantial evidence and was reached based upon a correct application of the relevant law").  A reviewing Court is obliged to take into account the entire record, including the evidence opposed to the agency's view from which conflicting inferences reasonably could be drawn.  Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 487-88 (1951).  Thus, where the record "clearly precludes [the] Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on

---

[1] I have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

matters within its special competence," the Court must set aside the agency's findings.  Id. at 490.

To prevail on her SOX retaliation claim, Gunther shoulders the burden of establishing causation by showing that her protected activity was a "contributing factor" in her termination.  29 C.F.R. § 1980.109(a).  The contributing factor standard of causation is not "toothless."  Feldman v. Law Enf't Assocs. Corp., 752 F.3d 339, 350 (4th Cir. 2014).  Under this standard, a complainant must still point to evidence showing a causal link between protected activity and adverse employment action.  Id.

In deciding that Gunther established a causal nexus between her filing of a SOX complaint and her termination, the ALJ looked only at the sequence of the events that led to the cessation of Gunther's employment at Deltek.  The ALJ concluded that because Gunther's termination followed protected activity, the protected activity must have caused her termination.  But nothing tied the chain of events to causation other than happenstance.

The ALJ's only discussion of proof of causation is, in toto, the following:

> Had neither complaint been filed, . . . she would not
> have returned to work on the day that she did, and she
> would not have been terminated based upon her actions
> at the time she returned.  Accordingly, Complainant's

38

> termination was causally related to the protected activities.

J.A. 52. It was solely upon this finding that the ALJ concluded Gunther met her burden of proof of the element of causation.

But this is a post hoc ergo propter hoc conclusion that is erroneous as a matter of law. Post hoc ergo propter hoc is "a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship." McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1243 (11th Cir. 2005); see also Huss v. Gayden, 571 F.3d 442, 459 (5th Cir. 2009) (noting "the post hoc ergo propter hoc fallacy assumes causality from temporal sequence"). The mere circumstance that protected activity precedes termination is not proof of a causal connection between the two.

Retaliation under SOX necessarily requires more than the mere occurrence of protected activity followed by adverse employment action, but that is all that the ALJ found to satisfy Gunther's burden of proving the element of causation. The statute cannot be read to mean, as the ALJ and Board found, that whenever an employee engages in protected activity prior to an adverse employment action like termination, the plaintiff has met her burden as to causation. See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (noting that a retaliation claim cannot rest on the logical fallacy of post hoc ergo

39

<u>propter</u> <u>hoc</u>, i.e., "after this, therefore because of this");

<u>Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.</u>, 160

F.3d 177, 182 (4th Cir. 1998) (accord); <u>Bermudez v. TRC</u>

<u>Holdings, Inc.</u>, 138 F.3d 1176, 1179 (7th Cir. 1998) ("Timing may

be an important clue to causation, but does not eliminate the

need to show causation -- and [the plaintiff] really has nothing

but the <u>post</u> <u>hoc</u> <u>ergo</u> <u>propter</u> <u>hoc</u> 'argument' to stand on.").

Proof of causation requires an evidentiary link between the
protected act and an adverse event. That evidentiary nexus
mandates evidence of actual causation, which is not supplied by
the metaphysical concept that an event later in time could only
have happened after an earlier event. But that is the ALJ's
stated basis of finding causation. The majority ignores this
error and relies on a new basis for causation that neither the
ALJ nor Board found: "that the explanation proffered by Deltek
for Gunther's termination was pretextual – or, more
colloquially, not true." Maj. op. at 20. The ALJ's finding
that Deltek's proffered reasons for terminating Gunther were
pretextual came only after the ALJ determined that Gunther
satisfied the elements of her prima facie case, including
causation. At no time did the ALJ or the Board tie any part of
a prima facie finding of causation to any finding of pretext,

40

which came only after the burden had shifted to Deltek to show an affirmative defense.[2]

Congress has imposed on this Court the responsibility to ensure that an agency "keeps within reasonable grounds. That responsibility is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the Courts of Appeals." Universal Camera Corp., 340 U.S. at 490. Under that standard, I am compelled to conclude based on this record that the ALJ erred as a matter of law in determining Gunther met her burden of proof for causation. See Welch, 536 F.3d at 276 (indicating we owe no deference to an agency determination that is "otherwise not in accordance with law"). Accordingly, I would reverse the

---

[2] The ALJ found causation solely based on a post hoc ergo propter hoc logical fallacy, and the majority is foreclosed from saving the ALJ's causation determination for reasons the ALJ did not articulate in the prima facie causation stage. "[A] reviewing court . . . must judge the propriety of [agency] action solely by the grounds invoked by the agency." SEC v. Chenery Corp., 332 U.S. 194, 196 (1947). Where, as here, the agency has made a finding "for no reason or for the wrong reason," King v. Califano, 615 F.2d 1018, 1020 (4th Cir. 1980), the Court is "powerless to affirm . . . by substituting what it considers to be a more adequate or proper basis." Chenery, 332 U.S. at 196; see also N.L.R.B. v. Ky. River Cmty. Care, Inc., 532 U.S. 706, 721 (2001) ("We may not enforce the Board's order by applying a legal standard the Board did not adopt."); Nken v. Holder, 585 F.3d 818, 822 (4th Cir. 2009) ("Established precedent dictates that a court may not guess at what an agency meant to say, but must instead restrict itself to what the agency actually did say.").

41

decision of the Board and direct that judgment be entered for Deltek.


## II. Damages

The ALJ awarded Gunther four years of front pay in the amount of $300,352 in addition to tuition reimbursement of $30,000 for the same period, although the ALJ recognized that Gunther "was essentially an entry level employee in a new field." J.A. 81. Gunther had neither a high school nor a college degree when Deltek hired her approximately one year before her termination, but the ALJ opined that Gunther would be "unlikely to obtain employment in her chosen field without the degree, as she did not work for [Deltek] for a sufficient period of time to obtain on-the-job qualifications."[3] J.A. 82. For reasons not apparent in the record, the ALJ then awarded Gunther four years of front pay and tuition reimbursement so that she could "attend a university full-time, without working, if she so chooses" in order to obtain a bachelor's degree in accounting or finance. Id. Although I would reverse the ALJ's decision on liability on the merits, I also address the damages award in view of the majority's approval of an award that is rankly

---

[3] Gunther represented that she had obtained a GED at some point.

42

speculative and not substantially supported by the record.  See Dotson v. Pfizer, Inc., 558 F.3d 284, 300 (4th Cir. 2009).

It is again helpful to consider the standard by which we review the ALJ's findings.  We will defer to an ALJ's factual findings only if supported by substantial evidence.  5 U.S.C. § 706(2)(E).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consol. Edison Co. of N.Y. v. N.L.R.B., 305 U.S. 197, 229 (1938).  "Even if legitimate reasons exist for rejecting [or crediting] certain evidence, the [ALJ] cannot do so for no reason or for the wrong reason."  King v. Califano, 615 F.2d 1018, 1020 (4th Cir. 1980). See also Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981) ("[I]t is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason.").

SOX entitles a prevailing employee only to such "relief necessary to make the employee whole," including reinstatement, back pay with interest, and various other fees and costs.  18 U.S.C. § 1514A(c).  The statute does not identify front pay as an available remedy, but front pay "has been recognized as a possible remedy in cases under the Sarbanes-Oxley and other whistleblower statutes enforced by OSHA in circumstances where reinstatement would not be appropriate."  Department of Labor, Procedures for the Handling of Retaliation Complaints Under

43

Section 806 of the Sarbanes-Oxley Act of 2002, as Amended, 80 FR 11865-02. Front pay, however, is "disfavored." Sellers v. Mineta, 358 F.3d 1058, 1063 (8th Cir. 2004). As such, we have cautioned courts to employ "discretion, restraint and balance" when considering whether to award front pay in order to avoid a "windfall" to the party seeking front pay. Duke v. Uniroyal Inc., 928 F.2d 1413, 1424 (4th Cir. 1991). A plaintiff bears the burden of providing "the essential data necessary to calculate a reasonably certain front pay award." McKnight v. Gen. Motors Corp., 973 F.2d 1366, 1372 (7th Cir. 1992). We will not give deference to front pay awards that are "unduly speculative." Dotson, 558 F.3d at 300.

The amount of front pay awarded in this case lacks substantial evidentiary support. The ALJ explicitly tied the award of four years' front pay, with full time tuition reimbursement for those years, to Gunther's supposed entitlement to a four-year college degree. But Gunther declined to present testimony from a vocational expert, a job counselor, or any neutral witness to support the ALJ's conclusion that she would be unable to secure comparable employment absent a college degree. The only record evidence to support the ALJ's award is Gunther's self-serving speculation as to her prospective ability to secure similar employment. On this record, she has failed to meet the required burden of proof to adduce the "essential data"

44

necessary to calculate a reasonable front pay award. <u>See</u> <u>McKnight</u>, 973 F.2d at 1372.

Gunther's anecdotal and self-serving testimony that a four-year college degree would be a prerequisite for obtaining comparable employment is belied by the fact that Deltek hired Gunther just one year prior to her termination without any college education and without relevant on-the-job training. Gunther admitted she had none of the usual certifications for a financial analyst position and was not pursuing any. J.A. 1281-82 (testifying that she was not a Certified Internal Auditor, Certified Fraud Examiner, or a Charted Financial Analyst and lacked a certificate in financial forensics). Her only certification was "a certificate in common sense." J.A. 1282.

Put simply, the ALJ did not temper the front pay calculation to avoid a "windfall" in Gunther's favor. <u>See</u> <u>Duke</u>, 928 F.2d at 1424. During her brief stay at Deltek, Gunther was enrolled only in a two-year program at a community college where she took two courses. She was not seeking a bachelor's degree, nor was she attending school full time. Further, Gunther discontinued taking classes after her termination. No law requires Deltek to bear the onerous burden of subsidizing Gunther's full time, four-year college education, a qualification Gunther didn't need to obtain her post with Deltek just one year earlier. There is no record evidence remotely

45

supporting this award, which actually puts Gunther in a far superior position than if she had remained at Deltek.

For example, the Deltek tuition reimbursement policy was limited to two classes per semester. J.A. 2224. And any such reimbursement plan was tied to Deltek receiving the benefit of the employee's services and a commitment to future services, a fact not accounted for in the tuition or front pay awards. Even if Gunther had taken the maximum reimbursable course-load year round (assuming the availability of three semesters) her maximum coverage over four years would be 24 classes, far fewer than required for a bachelor's degree. See U.S. Dep't of Educ., NCES 1999-179, Credit Production and Progress Toward the Bachelor's Degree: An Analysis of Postsecondary Transcripts for Beginning Students at 4-Year Institutions, at iii (1999) (noting a bachelor's degree generally requires 120 earned credit hours). Assuming each of those 24 courses was worth three credit hours and that she never missed one and performed satisfactorily, Gunther would only accumulate 72 credit hours in four years under the Deltek plan -- barely half those needed for a bachelor's degree. Gunther's tuition award bonanza thus puts her in a far better position than she could have been in while employed at Deltek.

Nothing in the record shows Gunther had a specific plan, much less a plan approved by Deltek, to obtain any level of

46

further education while employed there.  The ALJ's conclusion that Gunther was entitled to attend school full time to obtain a bachelor's degree is fundamentally divorced from what is necessary to make Gunther whole.  See 18 U.S.C. § 1514A(c).  See also Shore v. Fed. Express Corp., 777 F.2d 1155, 1160 (6th Cir. 1985) ("The cost of obtaining a college degree, cited by the plaintiff as a basis for the front pay award, cannot be considered a post-judgment effect of defendant's discrimination . . . .  However desirable a college education may be, we cannot impose this cost on the defendant in this case."); Ogden v. Wax Works, Inc., 29 F. Supp. 2d 1003 (N.D. Iowa 1998) ("[T]he expense of a college education should not be borne by [the employer] under the guise of front pay.").

The "windfall" character of the front pay award is also apparent from its extended duration.  Gunther worked for Deltek for approximately one year and, for a substantial period, she was out on Deltek-approved paid medical leave.  The front pay award exceeds the amount of time Deltek employed Gunther by at least three years.  A front pay award extending years into the future where the employee's tenure lasted approximately a year is patently speculative.  Moreover, Gunther has failed to present any evidence justifying such a lengthy prospective award.  Four years of front pay is an arbitrary award plucked from space without any record basis.

47

The majority, for its part, accepts the ALJ's four-year front pay award because the ALJ rejected Gunther's demand for ten years of front pay. Under the majority's logic, had Gunther only had the foresight to demand twenty years of front pay, she would have received an eight-year pay award. But rejection of Gunther's unsupported front pay request of ten years does not fill the void of record evidence to support the actual award. The only record "evidence" to support the award is Gunther's self-serving speculation. See, e.g., J.A. 2197-2201, 2288-95.

Searching for some evidentiary basis on which to affirm the ALJ's front pay determination, the majority points to the ALJ's finding that Gunther did not work for Deltek long enough to "'obtain on-the-job qualifications'" and is "'now unlikely to obtain' comparable employment without an undergraduate degree." Maj. op. at 34 (quoting J.A. 82). This reasoning misses the mark, for if Gunther could obtain sufficient "on-the-job qualifications" then she would not require a college degree. This is not a circumstance where a longtime employee is terminated from a post she held for years and years and faces a vastly different job market with expanded job-credential requirements. Deltek hired Gunther just one year prior to her termination without a college degree, and nothing precludes another employer from doing the same.

48

The award of front pay and tuition in this case is an arbitrary and capricious agency act. The Court owes no deference to the ALJ's decision on front pay, as it lacks a basis in the record and shows no "discretion, restraint and balance," which is required to avoid a front pay "windfall" such as Gunther received in this case. Duke, 928 F.2d at 1424.

## III. Conclusion

For all the foregoing reasons, I believe the majority opinion fails to take account of the Supreme Court's direction that we engage in "meaningful review" of agency decisions. Dickinson, 527 U.S. at 162. Instead, it affirms a finding of causation premised on nothing more than post hoc ergo propter hoc reasoning and a front pay award that is "unduly speculative," Dotson, 558 F.3d at 300, and amounts to a gross "windfall," Duke, 928 F.2d at 1424. I respectfully dissent and would reverse the judgment of the Board.